1  JOHN C. BEIERS (SBN 144282)
2  jbeiers@smcgov.org
   PAUL A. OKADA (SBN 197100)
3  pokada@smcgov.org
   DAVID A. SILBERMAN (SBN 211708)
4  dsilberman@smcgov.org
   MARGARET V. TIDES (SBN 311177)
5  mtides@smc.gov
   **SAN MATEO COUNTY COUNSEL**
6  400 County Center, 6th Floor
   Redwood City, CA 94063
7  Tel: (650) 363-4250
8  Fax: (650) 363-4034

9  JENNIFER LYON (SBN 215905)
   jlyon@mcdougallove.com
10 STEVEN E. BOEHMER (SBN 144817)
   sboehmer@mcdougallove.com
11 **McDOUGAL, LOVE, BOEHMER,**
   **FOLEY, LYON & CANLAS**
12 CITY ATTORNEY FOR CITY OF
   IMPERIAL BEACH
13 8100 La Mesa Boulevard, Ste. 200
   La Mesa, CA 91942
14 Tel: (619) 440-4444
   Fax: (619) 440-4907
15

16

BRIAN E. WASHINGTON (SBN 146807)
bwashington@marincounty.org
BRIAN C. CASE (SBN 254218)
bcase@marincounty.org
**MARIN COUNTY COUNSEL**
3501 Civic Center Drive Suite 275
San Rafael, CA 94903
Tel: (415) 473-6117
Fax: (415) 473-3796


VICTOR M. SHER (SBN 96197)
vic@sheredling.com
MATTHEW K. EDLING (SBN 250940)
matt@sheredling.com
TIMOTHY R. SLOANE (SBN 292864)
tim@sheredling.com
MARTIN D. QUIÑONES (SBN 293318)
marty@sheredling.com
KATIE H. JONES (SBN 300913)
katie@sheredling.com
**SHER EDLING LLP**
100 Montgomery Street, Ste. 1410
San Francisco, CA 94104
Tel: (628) 231-2500
Fax: (628) 231-2929

17 *Attorneys for Plaintiffs*

18

19                    **UNITED STATES DISTRICT COURT**
                  **NORTHERN DISTRICT OF CALIFORNIA**
                      **SAN FRANCISCO DIVISION**

20

21 The COUNTY OF SAN MATEO, individually
   and on behalf of THE PEOPLE OF THE
22 STATE OF CALIFORNIA,
23                              Plaintiff,
24        v.
25 CHEVRON CORP., et al.,
26                              Defendants.

CASE NO. 3:17-cv-04929-VC

**MEMORANDUM OF POINTS AND**
**AUTHORITIES IN SUPPORT OF**
**MOTION TO REMAND**


Date:        February 15, 2018
Time:        10:00 a.m.
Courtroom:   4, 17th Floor
Judge:       Hon. Vince Chhabria

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND**
**CASE NOS. 3:17-CV-04929-VC, 3:17-CV-04934-VC, 3:17-CV-04935-VC**

| | |
|---|---|
| THE CITY OF IMPERIAL BEACH, a municipal corporation, individually and on behalf of THE PEOPLE OF THE STATE OF CALIFORNIA, | CASE NO. 3:17-cv-04934-VC |
| Plaintiff, | |
| v. | |
| CHEVRON CORP., et al., | |
| Defendants. | |

| | |
|---|---|
| THE COUNTY OF MARIN, individually and on behalf of THE PEOPLE OF THE STATE OF CALIFORNIA, | CASE NO. 3:17-cv-04935-VC |
| Plaintiff, | |
| v. | |
| CHEVRON CORP., et al., | |
| Defendants. | |

SHER
EDLING LLP

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND
CASE NOS. 3:17-CV-04929-VC, 3:17-CV-04934-VC, 3:17-CV-04935-VC**

## TABLE OF CONTENTS

I.   INTRODUCTION........................................................................................... 1

II.  FACTS ......................................................................................................... 2

III. PROCEDURAL HISTORY ........................................................................... 5

IV.  APPLICABLE LEGAL STANDARDS ......................................................... 5

   A. Defendants Bear the Burden to Defeat the Strong Presumption Against Removal
      Jurisdiction................................................................................................... 5

   B. Federal Defenses, Including Ordinary Preemption, Cannot Confer Subject-Matter
      Jurisdiction................................................................................................... 6

V.   REMAND TO STATE COURT IS REQUIRED BECAUSE THE COURT LACKS
     SUBJECT-MATTER JURISDICTION OVER PLAINTIFFS' CLAIMS..................... 7

   A. Defendants' Preemption Defenses Do Not Support Removal......................... 7

      1. No Court Has Held That Only Federal Common Law Applies to State Law
         Claims Like Plaintiffs'........................................................................... 8

         a. *Kivalina* and *AEP* Provide No Basis for Removal Jurisdiction. ........... 8

         b. Defendants' Cases Concerning Whether Federal Common Law "Governs"
            a Particular Subject Address Ordinary Preemption Defenses and Choice of
            Law, Not Removal Jurisdiction......................................................... 10

      2. Defendants' Assertion that Federal Common Law "Governs" Plaintiffs' Claims
         Is an Ordinary Preemption Defense. ...................................................... 12

      3. The Clean Air Act Does Not Completely Preempt Plaintiffs' Claims. .......... 13

         a. Defendants Cannot Establish Complete Preemption........................... 15

         b. Far From Indicating Congressional Intent to Completely Preempt State Law,
            the Clean Air Act Repeatedly Emphasizes the Primary Role of the States. ....... 16

   B. Plaintiffs' Complaints Do Not Raise Any Substantial, Disputed Federal Questions. ... 20

      1. Plaintiffs' Complaints Do Not "Necessarily Raise" Any "Actually Disputed"
         Issues of Federal Law. ........................................................................ 21

      2. Defendants Have Not Shown That the Complaint Raises Questions of Federal
         Law That Are "Substantial" to the Federal System as a Whole. ............... 26

      3. Congress Has Struck the Balance of Judicial Responsibility in Favor of State
         Courts Hearing State Law Claims........................................................... 27

SHER
EDLING LLP

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND
CASE NOS. 3:17-CV-04929-VC, 3:17-CV-04934-VC, 3:17-CV-04935-VC                    i

4.  Defendants' Laundry List of Federal Defenses Does Not Provide for Federal Jurisdiction.................................................................................. 30

5.  Defendants' Invocation of Foreign Relations Is a Red Herring and Not a Basis for Federal Jurisdiction............................................................ 30

C.  Plaintiffs' Complaints Do Not Fall Within the Jurisdictional Grant of the Outer Continental Shelf Lands Act.......................................................................... 33

D.  There Is No Enclave Jurisdiction Because Plaintiffs' Claims Do Not "Arise" Within the Federal Enclave............................................................................. 37

1.  Plaintiffs' Injuries Occurred and Will Occur Exclusively on Non-Federal Lands.. 38

2.  Each of Plaintiffs' Claims Arose Only Once a Complete Tort Existed Upon Which Plaintiffs Could Sue, Which in This Case Occurred When and Where Plaintiffs Suffered Injury—on Non-Federal Lands. ................................. 42

E.  Plaintiffs' Claims Are Not Removable Under 28 U.S.C. § 1442(a)(1) Because Defendants Are Not "Acting Under Federal Officers."................................. 44

1.  Defendants Have Not Shown They "Acted Under" Federal Officers. .................. 46

2.  No Causal Nexus Exists Between Defendants' Actions Challenged in These Cases and the Directions of Any Federal Officer. .................................. 51

F.  The Case Is Not Removable Under the Bankruptcy Removal Provisions, 28 U.S.C §§ 1452(A) and 1334. .......................................................................... 52

1.  Plaintiffs Bring These Actions Pursuant to Their Police and Regulatory Powers, and 28 U.S.C. § 1452(a) Expressly Does Not Apply to Police Power Actions....... 52

2.  Plaintiffs' Actions Are Not "Relate[d] to" Any Bankruptcy Case. ........................ 55

3.  Equity Demands That This Case Be Remanded to State Court.............................. 57

VI.  CONCLUSION ............................................................................................... 58

SHER
EDLING LLP

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND
CASE NOS. 3:17-CV-04929-VC, 3:17-CV-04934-VC, 3:17-CV-04935-VC

ii

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Am. Ins. Ass'n v. Garamendi*,
    539 U.S. 396 (2003) ........................................................................................ 33

*Am. Elec. Power Co. v. Connecticut*,
    564 U.S. 410 (2011) ..................................................................................... 8, 9

*Amoco Prod. Co. v. Sea Robin Pipeline Co.*,
    844 F.2d 1202 (5th Cir. 1988) ................................................................... 35, 37

*Anderson v. Owens-Corning Fiberglas Corp.*,
    53 Cal. 3d 987 (1991) .............................................................................. 4, 21

*Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists & Aerospace Workers*,
    390 U.S. 557 (1968) ................................................................................ 14, 19

*Bader Farms, Inc. v. Monsanto Co.*,
    No. 1:16-CV-299 SNLJ, 2017 WL 633815 (E.D. Mo. Feb. 16, 2017) ................... 25

*Bailey v. Monsanto Co.*,
    176 F. Supp. 3d 853 (E.D. Mo. 2016) ............................................................ 52

*Barker v. Lull Eng'g Co.*,
    20 Cal. 3d 413 (1978) .................................................................................. 27

*Bearse v. Port of Seattle*,
    No. C09-0957RSL, 2009 WL 3066675 (W.D. Wash. Sept. 22, 2009) ................... 14

*Becker v. Ute Indian Tribe of the Uintah & Ouray Reservation*,
    770 F.3d 944 (10th Cir. 2014) ....................................................................... 23

*Bell v. Arvin Meritor, Inc.*,
    No. 12-00131-SC, 2012 WL 1110001 (N.D. Cal. Apr. 2, 2012) .......................... 43

*Bell v. Cheswick Generating Station*,
    734 F.3d 188 (3d Cir. 2013), *cert. denied*, 134 S. Ct. 2696 (2014) ................. 14, 18

*Beneficial Nat'l Bank v. Anderson*,
    539 U.S. 1 (2003) .................................................................................... 14, 19

*Bennett v. Sw. Airlines Co.*,
    484 F.3d 907 (7th Cir. 2007) ........................................................................ 23

*Birkenfeld v. City of Berkeley*,
    17 Cal. 3d 129 (1976) ................................................................................... 5

*Bd. of Comm'rs of Se. La. Flood Prot. Auth. v. Tennessee Gas Pipeline Co.*,
    850 F.3d 714 (5th Cir. 2017), *petition for cert. filed*, No. 17-99 (July 19, 2017) ................... 24

SHER
EDLING LLP

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND**
**CASE NOS. 3:17-CV-04929-VC, 3:17-CV-04934-VC, 3:17-CV-04935-VC**

iii

*Boyle v. United Techs. Corp.*,
    487 U.S. 500 (1988) ................................................................................................ 10

*Brooklyn Union Expl. Co. v. Tejas Power Corp.*,
    930 F. Supp. 289 (S.D. Tex. 1996) ........................................................................ 36

*Buckman Co. v. Plaintiffs' Legal Comm.*,
    531 U.S. 341 (2001) ................................................................................................ 24

*Cabalce v. Thomas E. Blanchard & Assocs., Inc.*,
    797 F.3d 720 (9th Cir. 2015) ................................................................................. 49

*Cal. Shock Trauma Air Rescue v. State Comp. Ins. Fund*,
    636 F.3d 538 (9th Cir. 2011) ............................................................................ 6, 30

*California ex rel. Brown v. Villalobos*,
    453 B.R. 404 (D. Nev. 2011) ................................................................................. 54

*California ex rel. Sacramento Metro. Air Quality Mgmt. Dist. v. Hardesty Sand & Gravel*,
    No. 2:11-CV-02278 JAM, 2012 WL 639344 (E.D. Cal. Feb. 24, 2012) ................................. 14

*California v. Kinder Morgan Energy Partners, L.P.*,
    569 F. Supp. 2d 1073 (S.D. Cal. 2008) .................................................................. 28

*California v. M & P Invs.*,
    213 F. Supp. 2d 1208 (E.D. Cal. 2002), *aff'd in part, dismissed in part*, 46 F. App'x 876
    (9th Cir. 2002) ........................................................................................................ 33

*Caltex Plastics, Inc. v. Lockheed Martin Corp.*,
    824 F.3d 1156 (9th Cir. 2016) ......................................................................... 10, 11

*Caterpillar Inc. v. Williams*,
    482 U.S. 386 (1987) .................................................................................. 6, 7, 12, 15

*Cerny v. Marathon Oil Corp.*,
    No. CIV.A. SA-13-CA-562, 2013 WL 5560483 (W.D. Tex. Oct. 7, 2013) ..................... 13, 14

*Chevron U.S.A., Inc. v. United States*,
    110 Fed. Cl. 747 (2013) ......................................................................................... 50

*City & Cnty. of San Francisco v. PG&E Corp.*,
    433 F.3d 1115 (9th Cir. 2006) ............................................................................... 53

*City of Lodi v. Randtron*,
    118 Cal. App. 4th 337 (2004) ................................................................................. 5

*City of Milwaukee v. Illinois & Michigan*,
    451 U.S. 304 (1981) ........................................................................................... 9, 11

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND**
**CASE NOS. 3:17-CV-04929-VC, 3:17-CV-04934-VC, 3:17-CV-04935-VC**

iv

*City of Modesto Redevelopment Agency v. Superior Court,*
    119 Cal. App. 4th 28 (2004) ........................................................................ 4

*City of New York v. Beretta U.S.A. Corp.,*
    401 F. Supp. 2d 244 (E.D.N.Y. 2005) ...................................................... 28

*Collier v. District of Columbia,*
    46 F. Supp. 3d 6 (D.D.C. 2014) .................................................................. 42

*Cnty. of Santa Clara v. Atl. Richfield Co.,*
    137 Cal. App. 4th 292 (2006) ................................................................ 4, 21

*CTS Corp. v. Waldburger,*
    -- U.S. --, 134 S. Ct. 2175 (2014) ............................................................ 16

*Drexel Burnham Lambert Grp., Inc. v. Vigilant Ins. Co.,*
    130 B.R. 405 (S.D.N.Y. 1991)................................................................... 58

*Durham v. Lockheed Martin Corp.,*
    445 F.3d 1247 (9th Cir. 2006) .............................................................. 5, 38

*Warren Boyeson & Christine Boyeson v. S.C. Elec. & Gas Co.,*
    No. 3:15-CV-04920-JMC, 2016 WL 1578950 (D.S.C. Apr. 20, 2016) .................................. 25

*Empire Healthchoice Assur., Inc. v. McVeigh,*
    547 U.S. 677 (2006)................................................................................... 21

*EP Operating Ltd. P'ship v. Placid Oil Co.,*
    26 F.3d 563 (5th Cir. 1994) ................................................................ 34, 35

*Exxon Shipping Co. v. Baker,*
    554 U.S. 471 (2008)................................................................................... 54

*Fairfield Indus., Inc. v. EP Energy E&P Co.,*
    No. CV H-12-2665, 2013 WL 12145968 (S.D. Tex. May 2, 2013) ........................................ 36

*Faulk v. Owens-Corning Fiberglass Corp.,*
    48 F. Supp. 2d 653 (E.D. Tex. 1999)......................................................... 48

*Flagstaff Med. Ctr., Inc. v. Sullivan,*
    962 F.2d 879 (9th Cir. 1992) ..................................................................... 11

*Ford v. Murphy Oil U.S.A., Inc.,*
    750 F. Supp. 766 (E.D. La. 1990).............................................................. 14

*Fox v. Ethicon Endo-Surgery, Inc.,*
    35 Cal. 4th 797 (2005) ............................................................................... 44

*Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.,*
    463 U.S. 1 (1983)............................................................................. passim

SHER
EDLING LLP

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND**
**CASE NOS. 3:17-CV-04929-VC, 3:17-CV-04934-VC, 3:17-CV-04935-VC**

v

*Freeman v. Grain Processing Corp.*,
   848 N.W.2d 58 (Iowa 2014), *cert. denied*, 135 S. Ct. 712 (2014)......................................10, 14

*Freiberg v. Swinerton & Walberg Prop. Servs., Inc.*,
   245 F. Supp. 2d 1144 (D. Colo. 2002) ...................................................................45

*Fung v. Abex Corp.*,
   816 F. Supp. 569 (N.D. Cal. 1992) .........................................................................43

*Gaus v. Miles, Inc.*,
   980 F.2d 564 (9th Cir. 1992) ...............................................................................5, 6

*Gingery v. City of Glendale*,
   831 F.3d 1222 (9th Cir. 2016) ............................................................................31, 32

*Glanton v. Harrah's Entm't, Inc.*,
   297 F. App'x 685 (9th Cir. 2008).............................................................................27

*Goncalves v. Rady Children's Hosp. San Diego*,
   865 F.3d 1237 (9th Cir. 2017) ............................................................................45, 51

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,
   545 U.S. 308 (2005)...........................................................................................passim

*Gully v. First Nat'l Bank*,
   299 U.S. 109 (1936).........................................................................................7, 59

*Gunn v. Minton*,
   568 U.S. 251 (2013)...............................................................................20, 21, 26

*Gutierrez v. Mobil Oil Corp.*,
   798 F. Supp. 1280 (W.D. Tex. 1992)........................................................................14

*Helix Land Co. v. City of San Diego*,
   82 Cal. App. 3d 932 (1978) ...................................................................................44

*Hendricks v. Dynegy Power Mktg., Inc.*,
   160 F. Supp. 2d 1155 (S.D. Cal. 2001)....................................................................12

*Her Majesty The Queen In Right of the Province of Ontario v. City of Detroit*,
   874 F.2d 332 (6th Cir. 1989) ............................................................................14, 19

*Hines v. Davidowitz*,
   312 U.S. 52 (1941)............................................................................................32

*Hobson v. Hansen*,
   265 F. Supp. 902 (D.D.C 1967) .............................................................................42

*Hopkins v. Plant Insulation Co.*,
   349 B.R. 805 (N.D. Cal. 2006) ...............................................................................58

SHER
EDLING LLP

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND**
**CASE NOS. 3:17-CV-04929-VC, 3:17-CV-04934-VC, 3:17-CV-04935-VC**                                                   vi

*Humble Pipe Line Co. v. Waggonner*,
  376 U.S. 369 (1964) ............................................................................................ 40

*Hunter v. United Van Lines*,
  746 F.2d 635 (9th Cir. 1984) ............................................................................ 18

*In re Berg*,
  230 F.3d 1165 (9th Cir. 2000) .......................................................................... 54

*In re Deepwater Horizon*,
  745 F.3d 157 (5th Cir. 2014) ................................................................ 35, 37, 39

*In re Fietz*,
  852 F.2d 455 (9th Cir. 1988) ............................................................................ 55

*In re First All. Mortg. Co.*,
  264 B.R. 634 (C.D. Cal. 2001) ......................................................................... 53

*In re High-Tech Employee Antitrust Litig.*,
  856 F. Supp. 2d 1103 (N.D. Cal. 2012) ........................................................... 43

*In re McCarthy*,
  230 B.R. 414 (B.A.P. 9th Cir. 1999) ................................................................ 57

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*,
  457 F. Supp. 2d 455 (S.D.N.Y. 2006) ................................................................ 4

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*,
  725 F.3d 65 (2d Cir. 2013) .......................................................................... 17, 19

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*,
  488 F.3d 112 (2d Cir. 2007) ..................................................................... passim

*In re National Security Agency Telecommunications Records Litigation*,
  483 F. Supp. 2d 934 (N.D. Cal. 2007) ....................................................... 25, 26

*In re Pegasus Gold Corp.*,
  394 F.3d 1189 (9th Cir. 2005) .......................................................................... 55

*In re Ray*,
  624 F.3d 1124 (9th Cir. 2010) .................................................................... 56, 57

*In re Schwartz*,
  No. 5:09-CV-05831 EJD, 2012 WL 899331 (N.D. Cal. Mar. 15, 2012) ................... 58

*In re Universal Life Church, Inc.*,
  128 F.3d 1294 (9th Cir. 1997) .................................................................... 53, 54

*In re Vioxx Prods. Liab. Litig.*,
  843 F. Supp. 2d 654 (E.D. La. 2012) ................................................................ 23

SHER
EDLING LLP

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND**
**CASE NOS. 3:17-CV-04929-VC, 3:17-CV-04934-VC, 3:17-CV-04935-VC**

vii

*Int'l Paper Co. v. Ouellette*,
   479 U.S. 481 (1987).............................................................................. 11, 18

*Jacobsen v. U.S. Postal Serv.*,
   993 F.2d 649 (9th Cir. 1992) ............................................................... 41, 42

*K2 Am. Corp. v. Roland Oil & Gas, LLC*,
   653 F.3d 1024 (9th Cir. 2011) .................................................................. 23

*Keltner v. SunCoke Energy, Inc.*,
   No. 3:14-CV-01374-DRHPMF, 2015 WL 3400234 (S.D. Ill. May 26, 2015)........................ 14

*Kirk v. Palmer*,
   19 F. Supp. 3d 707 (S.D. Tex. 2014) ........................................................ 23

*Laredo Offshore Constructors, Inc. v. Hunt Oil Co.*,
   754 F.2d 1223 (5th Cir. 1985) .................................................................. 37

*Leite v. Crane Co.*,
   749 F.3d 1117 (9th Cir. 2014), *cert. denied*, 135 S. Ct. 361 (2014)...................... 45, 48, 49, 51

*Lippitt v. Raymond James Fin. Servs., Inc.*,
   340 F.3d 1033 (9th Cir. 2003), *as amended* (Sept. 22, 2003)............................ 21

*LLOG Expl. Co. v. Certain Underwriters at Lloyd's of London*,
   No. CIVA 06-11248, 2007 WL 854307 (E.D. La. Mar. 16, 2007) .......................... 36

*Lockyer v. Mirant Corp.*,
   398 F.3d 1098 (9th Cir. 2005) .................................................................. 53

*Lontz v. Tharp*,
   413 F.3d 435 (4th Cir. 2005) .................................................................. 12

*Louisville & Nashville R.R. Co. v. Mottley*,
   211 U.S. 149 (1908)................................................................................ 6

*Marin Gen. Hosp. v. Modesto & Empire Traction Co.*,
   581 F.3d 941 (9th Cir. 2009) ............................................................... 12, 15

*Matheson v. Progressive Specialty Ins. Co.*,
   319 F.3d 1089 (9th Cir. 2003) ................................................................. 6

*MDS (Canada) Inc. v. Rad Source Techs., Inc.*,
   720 F.3d 833 (11th Cir. 2013) .................................................................. 26

*Merrell Dow Pharm. Inc. v. Thompson*,
   478 U.S. 804 (1986)............................................................................ 28, 59

*Merrick v. Diageo Americas Supply, Inc.*,
   805 F.3d 685 (6th Cir. 2015) *reh'g en banc denied*, 805 F.3d 685 (2015)................ 10, 14

SHER
EDLING LLP

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND**
**CASE NOS. 3:17-CV-04929-VC, 3:17-CV-04934-VC, 3:17-CV-04935-VC**

viii

*Metro. Life Ins. Co. v. Taylor*,
    481 U.S. 58 (1987) .................................................................................................... passim

*Meyers v. Chesterton, No. CIV.A.*,
    15-292, 2015 WL 2452346 (E.D. La. May 20, 2015) ........................................... 52

*Mississippi River Fuel Corp. v. Cocreham*,
    390 F.2d 34 (5th Cir. 1968) ..................................................................................... 41

*Mobley v. Cerro Flow Prod., Inc.*,
    No. CIV 09-697-GPM, 2010 WL 55906 (S.D. Ill. Jan. 5, 2010) ........................... 45

*Moore v. McKesson Corp.*,
    No. 17-CV-03784-VC, 2017 WL 3449055 (N.D. Cal. Aug. 11, 2017) ................... 29

*Moore-Thomas v. Alaska Airlines, Inc.*,
    553 F.3d 1241 (9th Cir. 2009) ................................................................................. 18

*Morrison v. Drummond Co.*,
    No. 2:14-CV-0406-SLB, 2015 WL 1345721 (N.D. Ala. Mar. 23, 2015) ........................... 13, 14

*Movsesian v. Victoria Versicherung AG*,
    670 F.3d 1067 (9th Cir. 2012) ................................................................................. 31

*N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*,
    514 U.S. 645 (1995) ................................................................................................. 17

*Nat'l Audubon Soc'y v. Dep't of Water*,
    869 F.2d 1196 (9th Cir. 1988) ........................................................................ 15, 17, 19

*Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*,
    471 U.S. 845 (1985) ................................................................................................. 13

*Native Vill. of Kivalina v. ExxonMobil Corp.*,
    663 F. Supp. 2d 863 (N.D. Cal. 2009), *aff'd on other grounds*, 696 F.3d 849 (9th Cir. 2012) .. 9

*Native Village of Kivalina v. ExxonMobil Corp.*,
    696 F.3d 849 (9th Cir. 2012), *cert. denied*, 133 S. Ct. 2390 (2013) ................................... 7, 8, 9

*NeuroRepair, Inc. v. Nath Law Grp.*,
    781 F.3d 1340 (Fed. Cir. 2015) ............................................................................... 26

*Nevada v. Bank of Am. Corp.*,
    672 F.3d 661 (9th Cir. 2012) ............................................................................ 21, 27

*Norgart v. Upjohn Co.*,
    21 Cal. 4th 383 (1999) ............................................................................................. 44

*O'Brien v. Fischel*,
    74 B.R. 546 (D. Haw. 1987) .................................................................................... 54

SHER
EDLING LLP

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND**
**CASE NOS. 3:17-CV-04929-VC, 3:17-CV-04934-VC, 3:17-CV-04935-VC**                    ix

*OCS, Par. of Plaquemines v. Total Petrochem. & Ref. USA, Inc.*,
   64 F. Supp. 3d 872 (E.D. La. 2014) ................................................................. 34, 36

*Ohio ex rel. Skaggs v. Brunner*,
   549 F.3d 468 (6th Cir. 2008) ................................................................................. 30

*Opera Plaza Residential Parcel Homeowners Ass'n v. Hoang*,
   376 F.3d 831 (9th Cir. 2004) ............................................................................... 7, 12

*Oregon ex rel. Kroger v. Johnson & Johnson*,
   832 F. Supp. 2d 1250 (D. Or. 2011) .................................................................. 22, 23

*Pacor, Inc. v. Higgins*,
   743 F.2d 984 (3d Cir. 1984) .................................................................................. 55

*Pagarigan v. Superior Court*,
   102 Cal. App. 4th 1121 (2002) .............................................................................. 17

*Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan*,
   388 F.3d 393 (3d Cir. 2004) .................................................................................. 15

*Patrickson v. Dole Food Co.*,
   251 F.3d 795 (9th Cir. 2001), *aff'd in part, cert. dismissed in part*, 538 U.S. 468 (2003)....... 32

*Peabody Coal Co. v. Navajo Nation*,
   373 F.3d 945 (9th Cir. 2004) ................................................................................... 6

*People v. Hy-Lond Enters. Inc.*,
   93 Cal. App. 3d 734 (1979) ................................................................................... 33

*People v. Monster Beverage Corp.*,
   No. C 13-2500 PJH, 2013 WL 5273000 (N.D. Cal. Sept. 18, 2013)...................... 29

*Pet Quarters, Inc. v. Depository Tr. & Clearing Corp.*,
   559 F.3d 772 (8th Cir. 2009) ................................................................................. 25

*Pettibone Corp. v. Easley*,
   935 F.2d 120 (7th Cir. 1991) ................................................................................. 56

*Plains Gas Sols., LLC v. Tennessee Gas Pipeline Co.*,
   46 F. Supp. 3d 701 (S.D. Tex. 2014) ................................................................. 34, 35

*Provincial Government of Marinduque v. Placer Dome, Inc.*,
   582 F.3d 1083 (9th Cir. 2009) ............................................................................ 11, 31

*Rains v. Criterion Sys., Inc.*,
   80 F.3d 339 (9th Cir. 1996) ................................................................................... 21

*Recar v. CNG Producing Co.*,
   853 F.2d 367 (5th Cir. 1988) ................................................................................. 35

*Rivet v. Regions Bank of La.*,
   522 U.S. 470 (1998)................................................................ 12

*Robles v. Gillig LLC*,
   771 F. Supp. 2d 1181 (N.D. Cal. 2011) ....................................... 5

*Rodrigue v. Aetna Cas. & Sur. Co.*,
   395 U.S. 352 (1969).............................................................. 34

*Roundup Prods. Liab. Litig., No. 16-MD-02741-VC*,
   2017 WL 3129098 (N.D. Cal. July 5, 2017)................................ 24

*Rubber Co. v. Buckeye Egg Farm, L.P.*,
   No. 2:99-CV-1413, 2000 WL 782131 (S.D. Ohio June 16, 2000)........ 14

*Rush Prudential HMO, Inc. v. Moran*,
   536 U.S. 355 (2002).............................................................. 17

*San Diego Gas & Elec. Co. v. Superior Court*,
   13 Cal. 4th 893 (1996)..................................................... 21, 27

*San Remo Hotel L.P. v. City & Cnty. of San Francisco*,
   27 Cal. 4th 643 (2002).......................................................... 29

*Shanks v. Dressel*,
   540 F.3d 1082 (9th Cir. 2008) ................................................ 23

*Sherman v. Hennessy Indus., Inc.*,
   237 Cal. App. 4th 1133 (2015) ............................................... 44

*Shulthis v. McDougal*,
   225 U.S. 561 (1912).............................................................. 21

*Silas Mason Co. v. Tax Comm'n of State of Washington*,
   302 U.S. 186 (1937).............................................................. 38

*Sparling v. Doyle*,
   No. EP-13-CV-00323-DCG, 2014 WL 2448926 (W.D. Tex. May 30, 2014)........ 43

*St. Joe Co. v. Transocean Offshore Deepwater Drilling Inc.*,
   774 F. Supp. 2d 596 (D. Del. 2011)......................................... 36

*St. Paul Mercury Indem. Co. v. Red Cab Co.*,
   303 U.S. 283 (1938)............................................................... 6

*Tennessee Gas Pipeline Co.*,
   29 F. Supp. 3d 808 (E.D. La. 2014) .................................... 40, 43

*Totah v. Bies*,
   No. C 10-05956 CW, 2011 WL 1324471 (N.D. Cal. Apr. 6, 2011)........ 42, 43, 44

SHER EDLING LLP

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND**
**CASE NOS. 3:17-CV-04929-VC, 3:17-CV-04934-VC, 3:17-CV-04935-VC**        xi

*United Offshore Co. v. S. Deepwater Pipeline Co.*,
  899 F.2d 405 (5th Cir. 1990) ...................................................................... 37

*United States v. California*,
  932 F.2d 1346 (9th Cir. 1991) .................................................................... 11

*United States v. Hooker Chems. & Plastics Corp.*,
  722 F. Supp. 960 (W.D.N.Y. 1989) ............................................................. 29

*United States v. Oil Transp. Co.*,
  172 B.R. 834 (E.D. La. 1994) ..................................................................... 29

*United States v. Pink*,
  315 U.S. 203 (1942) .................................................................................... 32

*United States v. Standard Oil Co. of California*,
  545 F.2d 624 (9th Cir. 1976) ...................................................................... 50

*Vaden v. Discover Bank*,
  556 U.S. 49 (2009) ........................................................................................ 6

*Valladolid v. Pac. Operations Offshore, LLP*,
  604 F.3d 1126 (9th Cir. 2010), *aff'd and remanded*, 565 U.S. 207 (2012) ............................. 34

*Valles v. Ivy Hill Corp.*,
  410 F.3d 1071 (9th Cir. 2005) .................................................................... 31

*Washington v. Monsanto Co.*,
  No. C17-53RSL, 2017 WL 3492132 (W.D. Wash. July 28, 2017) ........................................ 40

*W. Virginia ex rel. McGraw v. Eli Lilly & Co.*,
  476 F. Supp. 2d 230 (E.D.N.Y. 2007) ......................................................... 25

*Wander v. Kaus*,
  304 F.3d 856 (9th Cir. 2002) ................................................................ 29, 30

*Watson v. Philip Morris Cos., Inc.*,
  551 U.S. 142 (2007) .............................................................................. passim

*Wayne v. DHL Worldwide Express*,
  294 F.3d 1179 (9th Cir. 2002) .................................................................... 15

*Williams v. Beechnut Nutrition Corp.*,
  185 Cal. App. 3d 135 (1986) .................................................................... 4, 22

*Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage Leasehold & Easement in the Cloverly Subterranean, Geological Formation*,
  524 F.3d 1090 (9th Cir. 2008) .................................................................... 23

SHER
EDLING LLP

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND**
**CASE NOS. 3:17-CV-04929-VC, 3:17-CV-04934-VC, 3:17-CV-04935-VC**

xii

*Wilson v. Interlake Steel Co.*,
    32 Cal. 3d 229 (1982) ................................................................. 4, 22

*Winters v. Diamond Shamrock Chem. Co.*,
    149 F.3d 387 (5th Cir. 1998) ........................................................ 49

## Statutes

28 U.S.C. § 1331 ............................................................................. 13

28 U.S.C. § 1334 ........................................................... 52, 55, 58, 60

28 U.S.C. § 1442 ..................................................................... passim

28 U.S.C. § 1452 ........................................................... 52, 55, 58, 60

28 U.S.C. § 1447 ............................................................................... 2

30 U.S.C. § 1255 ............................................................................. 28

30 U.S.C. § 1270 ............................................................................. 28

42 U.S.C. § 1983 ............................................................................. 42

42 U.S.C. § 5801 ............................................................................. 28

42 U.S.C. § 7401 ................................................................. 16, 17, 28

42 U.S.C. § 7413 ............................................................................. 15

42 U.S.C. § 7416 ..................................................................... 17, 28

42 U.S.C. § 7604 ..................................................................... 18, 28

43 U.S.C. § 1349 ................................................................. 33, 34, 35

Cal. Civ. Proc. Code § 312 ............................................................. 44

Cal. Civil Code § 1714 .................................................................... 22

Cal. Civil Code §§ 3479, 3480–81, 3491, 3493, 3501–03 ............... 22

Cal. Const. art. XI, § 7 ..................................................................... 5

**SHER**
**EDLING LLP**

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND**
**CASE NOS. 3:17-CV-04929-VC, 3:17-CV-04934-VC, 3:17-CV-04935-VC**

xiii

## I.      INTRODUCTION

If genius is the ability to reduce the complicated to the simple, Defendants' Notice of Removal exemplifies the opposite. The Notice entirely misrepresents the substance of Plaintiffs' claims—which seek money damages and abatement under California law to mitigate harm to Plaintiffs' coastlines—and falsely portrays them as seeking a halt to greenhouse gas emissions and fossil fuel use worldwide. That critical assertion in Defendants' Notice is simply wrong and finds no support in the complaints filed by the Counties of San Mateo and Marin and the City of Imperial Beach ("Complaints"). The Notice then asserts a menagerie of theories why its caricature of the Plaintiffs' claims presents federal questions and is thus purportedly removable.

None of Defendants' theories has any traction, however, because none has anything to do with the actual allegations and claims in the Complaints. The Supreme Court has long held:

> [Under] the century-old jurisdictional framework governing removal of federal question cases from state into federal courts, . . . a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law. The 'well-pleaded complaint rule' is the basic principle marking the boundaries of the federal question jurisdiction of the federal district courts.

*Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987) (citations omitted).

Plaintiffs bring claims under California law for public and private nuisance, product liability (failure to warn and defective design), negligence, and trespass arising out of injuries sustained by the Counties of San Mateo and Marin and the City of Imperial Beach due to encroaching seawater. Plaintiffs do not seek relief under any federal law, do not premise their state law claims on any violations of federal law, and do not seek to modify or challenge any federal regulatory framework. Instead, they assert traditional California law causes of action for concrete injuries to their own coastlines—which Defendants have elected to mischaracterize in a misguided effort to establish federal question jurisdiction.

Defendants' attempts to invoke federal common law fail because even if it applied to this case (and Plaintiffs deny it does) it arises only as a defense, which cannot support removal jurisdiction. Defendants' efforts to invoke "complete preemption" under the federal Clean Air Act, in turn, founder on the purpose, structure, and language of the Act (all of which explicitly

SHER EDLING LLP

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND**
**CASE NOS. 3:17-CV-04929-VC, 3:17-CV-04934-VC, 3:17-CV-04935-VC**                    1

emphasize the primary role of states in addressing air pollution), as well as a large body of caselaw holding that the Act does not preempt state law claims.

Plaintiffs' injuries do not arise out of operations on the Outer Continental Shelf nor in a federal enclave, nor do Defendants' actions that give rise to Plaintiffs' injuries come at the direction of a federal officer. Instead, Plaintiffs' injuries arise from the defective nature of Defendants' fossil fuel products, Defendants' injection of those products into the marketplace without sufficient warnings of their known dangers, and from the campaign of misinformation that undermined public understanding of those dangers. The location of the extraction is irrelevant to the success or failure of Plaintiffs' claims, and any contractual relationship with an actual federal officer is unconnected to Defendants' tortious conduct and the police powers Plaintiffs seek to enforce. Finally, there is no basis for removal based on bankruptcy, because Plaintiffs' claims arise out of the exercise of their police power to protect the public.

Plaintiffs respectfully request that the Court grant their motion to remand, pursuant to 28 U.S.C § 1447.

## II.    FACTS

Plaintiffs San Mateo County, Marin County, and the City of Imperial Beach sued Defendants—36 fossil fuel corporations—in San Mateo, Marin, and Contra Costa County Superior Courts for equitable relief and damages associated with injuries that the public entities have sustained as a result of sea level rise. Case Nos. 17-04929 (Dkt. No. 1-2 at ¶¶ 179–267), 17-04935 (Dkt. No. 1-2, at ¶¶ 180–268), 17-04934 (Dkt. No. 1-2 at ¶¶ 176–264).[1] Defendants have known the truth for nearly 50 years: their oil, gas, and coal products create greenhouse gas pollution that warms the oceans, changes our climate, and causes sea levels to rise. ¶¶ 1, 5, 81–141, 181, 207, 250–51. They have known for decades that the consequences could be catastrophic and that only a narrow window of time existed to take action before the damage might be irreversible. *Id.* They were so certain of this science that some even took steps to

---

[1] All Docket references shall be to Case No. 17-04929 unless otherwise indicated. All ¶¶ refer to the Complaint paragraphs.

SHER
EDLING LLP

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND**
**CASE NOS. 3:17-CV-04929-VC, 3:17-CV-04934-VC, 3:17-CV-04935-VC**

2

protect their own assets from rising seas and more extreme storms, and they developed new technologies to profit from drilling in a soon-to-be ice-free Arctic. ¶¶ 5, 142–47.

Despite that knowledge, Defendants engaged for decades in a coordinated, multi-front effort to conceal and contradict their own knowledge, discredit the growing body of publicly available science, and persistently create doubt in the minds of customers, consumers, regulators, and the media. ¶¶ 110–41. Their own scientists warned in the 1970s that a narrowing window of time remained before "hard decisions regarding changes in energy strategy might become critical." ¶ 86. Defendants launched multi-million-dollar public relations campaigns to prevent regulation by denying the truth and deceiving the public and policymakers, while continuing to market their products aggressively and increasing production and profits. ¶ 138.

The 36 Defendants are responsible by themselves for at least about 20% of all industrial carbon dioxide emissions between 1965 and 2015, a critical period known to scientists as the "Great Acceleration," during which the vast majority of all such emissions in human history have occurred. ¶¶ 4, 7, 52–54. Industrial carbon dioxide emission is the dominant factor in ocean thermal expansion, glacier mass loss, negative surface balance from the ice sheets, all of which are the dominant factors contributing to sea level rise. ¶¶ 55–59. In turn, the frequency of extreme sea level events has correspondingly increased with the acceleration of industrial emissions. ¶¶ 55–71. As a result of rising seas, Marin County and San Mateo County and their residents have been injured on the counties' Pacific Ocean coastlines to the west, and their San Francisco Bay coastlines to the east. Case No. 17-cv-04935, ¶¶ 162–79; Case No. 17-cv-04929, ¶¶ 8, 162–78. Similarly, the rising sea level has injured the City of Imperial Beach and its residents. Case No. 17-cv-04934, ¶¶ 162–75. Further, the impacts on Plaintiffs, already serious, will be dire. Indeed, even if all emissions from fossil fuel use ceased today, sea levels would continue to rise and accelerate due to "locked in" greenhouse gases already emitted. ¶ 169.

The primary source of industrial carbon dioxide emissions is the extraction, production, and consumption of fossil fuel products (coal, oil, and natural gas). ¶¶ 22, 24, 26. Plaintiffs' injuries arise from the defective nature of these fossil fuel products, Defendants' knowledge of the dangerous effects of their products, injection of those products into commerce without

SHER
EDLING LLP

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND
CASE NOS. 3:17-CV-04929-VC, 3:17-CV-04934-VC, 3:17-CV-04935-VC**

3

1    sufficiently warning of the known dangers of those products, and from their campaign of

2    misinformation that undermined public understanding of those dangers. ¶¶ 176–264.

3          Plaintiffs assert claims only under California law for public nuisance, product liability

4    (failure to warn and defective design), private nuisance, negligence, and trespass arising out of

5    injuries sustained in the Counties of San Mateo and Marin and the City of Imperial Beach.

6    ¶¶ 179–267. State law amply supports these claims. For example, in *County of Santa Clara v.*

7    *Atlantic Richfield Co.*, 137 Cal. App. 4th 292, 306, 309–11 (2006), a public nuisance case against

8    the manufacturers of lead paint, plaintiff public entities

9          alleged that defendants assisted in the creation of this nuisance by concealing the
         dangers of lead, mounting a campaign against regulation of lead, and promoting
10        lead paint for interior use even though defendants had known for nearly a century
         that such a use of lead paint was hazardous to human beings. Defendants
11        "[e]ngage[d] in a massive campaign to promote the use of lead . . .". . . .
         [Plaintiffs] have adequately alleged that defendants are liable for the abatement of
12        this public nuisance.

13   *Id.* at 306. As in *Santa Clara,* public nuisance liability here lies against Defendants based on

14   "their intentional promotion of [their products] with knowledge of the public health hazard that

15   this use would create." *Id.* at 310; *accord, e.g., In re Methyl Tertiary Butyl Ether ("MTBE")*

16   *Prods. Liab. Litig.,* 457 F. Supp. 2d 455, 464 (S.D.N.Y. 2006) (applying California law)

17   (manufacturer liability for contamination of public drinking water); *City of Modesto*

18   *Redevelopment Agency v. Superior Court*, 119 Cal. App. 4th 28, 43 (2004) (same). California

19   law equally supports Plaintiffs' other legal claims. *See, e.g., Anderson v. Owens-Corning*

20   *Fiberglas Corp.*, 53 Cal. 3d 987, 995–1003 (1991) (defining strict product liability for design

21   defect and failure to warn); *Williams v. Beechnut Nutrition Corp.*, 185 Cal. App. 3d 135, 141

22   (1986) (defining duty to exercise reasonable care in product design); *Wilson v. Interlake Steel*

23   *Co.*, 32 Cal. 3d 229, 233 (1982) (defining trespass).

24         Plaintiffs do not seek to nullify or modify any permit issued under state or federal law;

25   nor to affect any greenhouse gas regulation, law, or treaty, foreign or domestic; they certainly do

26   not "seek to regulate nationwide emissions that . . . conform to EPA's emission standard," (Not.

27

28

SHER
EDLING LLP

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND**
**CASE NOS. 3:17-CV-04929-VC, 3:17-CV-04934-VC, 3:17-CV-04935-VC**                          4

1  of Rem. ¶ 47); nor do they "see[k] to regulate greenhouse gas emissions worldwide, far beyond

2  the borders of the United States" (Not. of Rem. ¶ 34).[2] In conformity with their constitutionally

3  conferred powers, Plaintiffs seek compensation and costs of abatement—namely adaptation and

4  mitigation measures within their geographic boundaries—for harms caused by Defendants'

5  conduct. ¶¶ 162–91, Prayer.

6  **III.  PROCEDURAL HISTORY**

7  Plaintiffs filed their complaints in California State Superior Courts on July 18, 2017.[3]

8  Defendants filed timely notices of removal asserting seven separate grounds for federal court

9  jurisdiction. The Court related the three cases pursuant to Civil Local Rule 3-12(b) and

10  reassigned the later-filed Marin County and Imperial Beach actions to the first-filed San Mateo

11  County docket.[4]

12  **IV.  APPLICABLE LEGAL STANDARDS**

13  **A.  Defendants Bear the Burden to Defeat the Strong Presumption Against
       Removal Jurisdiction.**

14

15  "'[F]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in

16  the first instance.'" *Robles v. Gillig LLC*, 771 F. Supp. 2d 1181, 1183 (N.D. Cal. 2011) (quoting

17  *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992)). Removal statutes are therefore "strictly

18  construed against federal court jurisdiction." *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247,

19  1253 (9th Cir. 2006). "The 'strong presumption' against removal jurisdiction means that the

20

21  _____

22  [2] Nor would they have the authority to do so. *See City of Lodi v. Randtron*, 118 Cal. App. 4th
       337, 352 (2004) ("[A] municipality's police power to protect the health, safety and comfort of its

23  inhabitants is plenary," under the California Constitution, "[a]s long as that power is exercised
       within the municipality's territorial limits and does not conflict with state law."); *Birkenfeld v.*

24  *City of Berkeley*, 17 Cal. 3d 129, 140 (1976) (a city's police power can only be applied within its
       own territory); Cal. Const. art. XI, § 7.

25  [3] County of San Mateo filed in San Mateo County Superior Court, Case No. 17-CIV-03222;
       County of Marin filed in Marin County Superior Court, Case No. CIV 1702586; City of Imperial

26  Beach filed in Contra Costa County Superior Court, Case No. C17-01227.

27  [4] Stipulation and Order to Relate Cases, *Cnty. of San Mateo v. Chevron Corp. et al.*, No. 3:17-cv-
       4929-VC (N.D. Cal. Sept. 12, 2017).

28

SHER
EDLING LLP

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND
CASE NOS. 3:17-CV-04929-VC, 3:17-CV-04934-VC, 3:17-CV-04935-VC**                        5

1  defendant always has the burden of establishing that removal is proper." *Gaus*, 980 F.2d at 566

2  (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–90 (1938)). Any

3  doubts as to the propriety of removal are resolved in favor of remand. *E.g.*, *Matheson v.*

4  *Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003).

5         "For a case to 'arise under' federal law, a plaintiff's well-pleaded complaint must

6  establish either (1) that federal law creates the cause of action or (2) that the plaintiff's asserted

7  right to relief depends on the resolution of a substantial question of federal law." *Peabody Coal*

8  *Co. v. Navajo Nation*, 373 F.3d 945, 949 (9th Cir. 2004). The well-pleaded complaint rule

9  "makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by

10  exclusive reliance on state law." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). It is a

11  "powerful doctrine" that "severely limits the number of cases in which state law 'creates the

12  cause of action' that may be initiated in or removed to federal district court." *Franchise Tax Bd.*

13  *of State of Cal. v. Constr. Laborers Vacation Tr. for S. California*, 463 U.S. 1, 9–10 (1983).

14         A state law claim "present[s] a justiciable federal question only if it satisfies *both* the

15  well-plead complaint rule *and* passes the 'implicates significant federal issues' test" which

16  requires the federal issues within the state law claim to be "'necessary, . . . actually disputed, and

17  substantial,' and 'which a federal forum may entertain without disturbing any congressionally

18  approved balance of federal and state judicial responsibilities'." *Cal. Shock Trauma Air Rescue*

19  *v. State Comp. Ins. Fund*, 636 F.3d 538, 542 (9th Cir. 2011) (quoting *Grable & Sons Metal*

20  *Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005)).

21     **B.     Federal Defenses, Including Ordinary Preemption, Cannot Confer Subject-**
22              **Matter Jurisdiction.**

23         The well-pleaded complaint rule's close corollary is that "[f]ederal jurisdiction cannot be

24  predicated on an actual or anticipated defense" based in federal law, whether anticipated by the

25  plaintiff in the complaint, or asserted by the defendants in the notice of removal. *Vaden v.*

26  *Discover Bank*, 556 U.S. 49, 60 (2009) (quoting *Louisville & Nashville R.R. Co. v. Mottley*, 211

27  U.S. 149, 152 (1908)). It is "settled law that a case may not be removed to federal court on the

28  basis of a federal defense, including the defense of preemption, even if the defense is anticipated

SHER
EDLING LLP

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND
CASE NOS. 3:17-CV-04929-VC, 3:17-CV-04934-VC, 3:17-CV-04935-VC**                    6

in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case." *Franchise Tax Bd.*, 463 U.S. at 14; *see also Gully v. First Nat'l Bank*, 299 U.S. 109, 116 (1936) ("By unimpeachable authority, a suit brought upon a state statute does not arise under an act of Congress or the Constitution of the United States because prohibited thereby."). State courts are well-equipped to determine whether a state law claim is preempted, and "the fact that a defendant might ultimately prove that a plaintiff's claims are preempted does not establish federal jurisdiction." *Opera Plaza Residential Parcel Homeowners Ass'n v. Hoang*, 376 F.3d 831, 838 (9th Cir. 2004) (quoting *Caterpillar*, 482 U.S. at 398) (punctuation omitted).

The only narrow exception to the rule against removal based on federal defenses is the so-called "complete preemption" doctrine. Under that exception, "the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Caterpillar*, 482 U.S. at 393 (quoting *Metropolitan Life Ins. Co.*, 481 U.S. at 65).

## V.   REMAND TO STATE COURT IS REQUIRED BECAUSE THE COURT LACKS SUBJECT-MATTER JURISDICTION OVER PLAINTIFFS' CLAIMS.

### A.   Defendants' Preemption Defenses Do Not Support Removal.

Raising a tangled and internally self-contradictory web of assertions that boils down to an ordinary preemption defense, Defendants' bases for removal are meritless. As explained more fully below:

1. Defendants' assertion that the Ninth Circuit has held federal common law applies to claims like Plaintiffs' such that "state law *cannot* be applied" (Not. of Rem. ¶ 16) is demonstrably wrong because it mischaracterizes the court's holding in *Native Village of Kivalina v. ExxonMobil Corp.*, 696 F.3d 849 (9th Cir. 2012), *cert. denied*, 133 S. Ct. 2390 (2013) ("*Kivalina*").

2. More importantly, Defendants' assertion that federal common law "governs" plaintiffs' claims could not confer removal jurisdiction on the Court even if it were correct. It is an ordinary preemption defense to be considered by the state court on remand. *See, e.g.*, *Franchise Tax Bd.*, 463 U.S. at 14.

3. Defendants' further assertion, that the federal Clean Air Act completely preempts state law, fails. Defendants argue that any state law cause of action related to their tortious promotion and marketing of fossil fuels with full knowledge of the dangers their products pose to communities like Plaintiffs', is in fact a federal claim under the Clean Air Act, subject to removal (Not. of Rem. ¶¶ 7, 36–48). That argument ignores congressional intent, the structure and language of the Act (which includes two express savings clauses), and the large body of federal and state cases rejecting complete preemption.

### 1. No Court Has Held That Only Federal Common Law Applies to State Law Claims Like Plaintiffs'.

#### a. *Kivalina* and *AEP* Provide No Basis for Removal Jurisdiction.

Defendants' lead argument—that the Ninth Circuit has held "federal common law governs global warming-related tort claims" and state law therefore "cannot govern such claims" (Not. of Rem. ¶ 17)—is demonstrably wrong. But more importantly, the issue it raises is an ordinary preemption defense, and such a defense simply cannot confer jurisdiction on this Court.

In two successive cases, *American Electric Power Co. v. Connecticut*, 564 U.S. 410 (2011) ("*AEP*"), and *Kivalina*, 696 F.3d 849, the Supreme Court and Ninth Circuit found that the plaintiffs' claims, pled under federal common law, had been displaced by the Clean Air Act. Neither case considered the relationship between federal common law and state law, and neither considered any issue of subject matter jurisdiction, let alone removal jurisdiction. In *AEP*, eight states, New York City, and three land trusts sued five major electric power companies in federal court, alleging that the companies' greenhouse-gas emissions violated the federal common law of interstate nuisance or, in the alternative, state tort law. 564 U.S. at 418. Justice Ginsburg, writing for a unanimous Court, expressly did not reach the question of whether state nuisance law may address emissions by stationary sources regulated by the Clean Air Act:

> In light of our holding that the Clean Air Act displaces federal common law, the availability *vel non* of a state lawsuit depends, *inter alia*, on the preemptive effect of the federal Act. None of the parties have briefed preemption or otherwise addressed the availability of a claim under state nuisance law. We therefore leave the matter open for consideration on remand.

SHER EDLING LLP

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND CASE NOS. 3:17-CV-04929-VC, 3:17-CV-04934-VC, 3:17-CV-04935-VC**

8

1   *Id.* at 429 (citations omitted).

2        In *Kivalina*, the plaintiff municipality brought both federal and state nuisance claims in

3   federal court against fossil fuel and utility companies. 696 F.3d at 853. Judge Armstrong of this

4   Court granted defendants' motion to dismiss the federal claims, separately stating that the Court

5   "declines to assert supplemental jurisdiction over the remaining state law claims which are

6   dismissed *without prejudice to their presentation in a state court action*." *Native Vill. of Kivalina*

7   *v. ExxonMobil Corp.*, 663 F. Supp. 2d 863, 882–83 (N.D. Cal. 2009) (emphasis added), *aff'd on*

8   *other grounds*, 696 F.3d 849 (9th Cir. 2012). Because the plaintiff did not appeal the dismissal of

9   the supplemental state law claims, the Ninth Circuit had no occasion to address federal court

10  jurisdiction over them, much less their removability. Rather, the Court of Appeals applied *AEP*'s

11  holding that the Clean Air Act addresses "domestic greenhouse gas emissions from stationary

12  sources and has therefore displaced *federal* common law." *Kivalina*, 696 F.3d at 856 (emphasis

13  added). As Judge Pro explained in his concurrence:

14          Displacement of the federal common law does not leave those injured by air
15          pollution without a remedy. *Once federal common law is displaced, state*
            *nuisance law becomes an available option to the extent it is not preempted by*
16          *federal law*. . . . The district court below dismissed Kivalina's state law nuisance
            claim without prejudice to refiling it in state court, and *Kivalina may pursue*
17          *whatever remedies it may have under state law to the extent their claims are not*
            *preempted*.
18

19  *Id.* at 866 (Pro, J., concurring) (emphases added).

20        Defendants commit a fundamental error by conflating the relationship between federal

21  statutes and federal common law, on the one hand, with the relationship between federal law and

22  state law, on the other—and then attempting to pry a basis for removal jurisdiction out of that

23  false equivalency. *AEP* and *Kivalina* addressed only the relationship between federal common

24  law and federal statutory law; the preemptive relationship between federal and state law invokes

25  a very different calculus. "Legislative displacement of federal common law does not require the

26  'same sort of evidence of a clear and manifest [congressional] purpose' demanded for

27

28

SHER
EDLING LLP

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND**      9
**CASE NOS. 3:17-CV-04929-VC, 3:17-CV-04934-VC, 3:17-CV-04935-VC**

1    preemption of state law." *AEP*, 564 U.S. at 423 (citing *City of Milwaukee v. Illinois & Michigan*,

2    451 U.S. 304, 317 (1981)).[5] *AEP* and *Kivalina* explicitly left open the viability of state law

3    claims addressing harms related to climate change. Those cases have no bearing on the question

4    of when and to what extent federal law preempts state law. But, ultimately, the Court need not

5    decide the merits of Defendant's argument—and indeed lacks jurisdiction to rule on it—because

6    it is nothing more than an ordinary preemption defense and thus not a valid ground for removal.

7                    b.   <u>Defendants' Cases Concerning Whether Federal Common Law
                         "Governs" a Particular Subject Address Ordinary Preemption</u>

8                         <u>Defenses and Choice of Law, Not Removal Jurisdiction.</u>

9           Defendants' erroneous substantive position that federal law "governs" this case does not

10   support their equally erroneous jurisdictional proposition that *Kivalina* or *AEP* made all cases

11   touching on global warming removable. For one thing, none of the cases Defendants cite for that

12   purpose even considered removal jurisdiction. They were all filed in federal district court in the

13   first instance, and all considered ordinary preemption or choice of law issues. In *Boyle v. United*

14   *Technologies Corp.*, 487 U.S. 500, 504 (1988), for example, the Court held generally that in "a

15   few areas, involving 'uniquely federal interests,' . . . state law is pre-empted and replaced" by

16   federal common law. But *Boyle* was a diversity case commenced in district court, and did not

17   discuss any jurisdictional issue. *See id.* at 502. The Ninth Circuit in *Caltex Plastics, Inc. v.*

18   *Lockheed Martin Corp.*, 824 F.3d 1156 (9th Cir. 2016), likewise did not consider any

19   jurisdictional question. The court held only that breach of contract claims against military

20

21   _____

     [5] *Accord, e.g., Merrick v. Diageo Americas Supply, Inc.*, 805 F.3d 685, 693 (6th Cir. 2015) *reh'g*
22   *en banc denied*, 805 F.3d 685 (2015) ("There are fundamental differences between displacement
     of federal common law by the [Clean Air] Act and preemption of state common law by the Act.
23   For one thing, the Clean Air Act expressly reserves for the states—including state courts—the
     right to prescribe requirements more stringent than those set under the Clean Air Act.");
24   *Freeman v. Grain Processing Corp.*, 848 N.W.2d 58, 83 (Iowa 2014), *cert. denied*, 135 S. Ct.
     712 (2014) ("(1) [T]he question of displacement of federal common law is different than the
25   question of preemption of state law actions, and (2) the standard for displacement of federal
     common law is different than the standard for preemption of state law. Further, in considering
26   the issues of displacement of federal common law under the [Clean Water Act] and the [Clean
     Air Act], the Supreme Court has not had to consider the statutory language in the [Clean Air Act]
27   suggesting a congressional intent to not preempt state law.").

28

SHER
EDLING LLP

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND**
**CASE NOS. 3:17-CV-04929-VC, 3:17-CV-04934-VC, 3:17-CV-04935-VC**                    10

1  contractors are "governed by federal common law" for *choice of law* purposes, and affirmed

2  dismissal for failure to state a claim under federal law. *Id.* at 1159–61. In *International Paper*

3  *Co. v. Ouellette*, 479 U.S. 481, 500 (1987), the action was removed from Vermont state court on

4  diversity grounds, and considered only whether the Clean Water Act preempted the common law

5  cases of action as alleged—not whether any basis for jurisdiction existed beside diversity.

6  Finally, *City of Milwaukee v. Illinois & Michigan*, 451 U.S. 304, 310 (1981), began when the

7  State of Illinois filed a complaint in federal court, expressly seeking to abate an alleged nuisance

8  "under federal common law." The Court considered whether the Clean Water Act displaced

9  certain federal common law nuisance claims related to water pollution, but did not present any

10  jurisdiction or removability issue. *Id.* Defendants' cases have nothing to do with the removability

11  of state law claims.

12        The same is true of cases Defendants cite for the incorrect proposition that "in

13  determining whether a case arises under federal law and is properly removable, the Plaintiff's

14  proffered position on a question of law is not entitled to any deference." Not. of Rem. ¶ 17. None

15  of them has anything to do with how a district court construes state law claims on a motion to

16  remand, and none sheds light on whether Plaintiffs' claims here are removable. In *United States*

17  *v. California*, 932 F.2d 1346, 1347 (9th Cir. 1991), the United States sued California in district

18  court under a federal common law theory, seeking restitution for taxes it paid to the state on

19  behalf of a contractor. The Ninth Circuit held *as to choice of law*, "whether state or federal law

20  governs is a question of law and is reviewable de novo." *Id.* at 1349. The case raised no question

21  of jurisdiction. Likewise, *Flagstaff Medical Center, Inc. v. Sullivan*, 962 F.2d 879, 883–84 (9th

22  Cir. 1992), considered actions originally filed in district court, on appeal from orders of partial

23  summary judgment. It considered in part whether federal healthcare reporting regulations

24  preempted substantive state contract law, but did not face any issue of jurisdiction. *Id.* at 889–90.

25  Finally, in *Provincial Government of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1087

26  (9th Cir. 2009), the court stated the unremarkable rule that courts of appeal "review *de novo* a

27  district court's determination that subject-matter jurisdiction exists for a case that has been

28  removed," but did not consider, much less rule, on how a district court construes state law claims

SHER
EDLING LLP

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND**
**CASE NOS. 3:17-CV-04929-VC, 3:17-CV-04934-VC, 3:17-CV-04935-VC**                    11

on a motion for remand.

### 2. Defendants' Assertion that Federal Common Law "Governs" Plaintiffs' Claims Is an Ordinary Preemption Defense.

The crux of Defendants' federal common law argument is that this "action is removable because Plaintiff's claims, to the extent that such claims exist, necessarily are governed by federal common law, and not state common law." Not. of Rem. ¶ 13. Although Defendants conspicuously avoid using the term "preemption," the argument unavoidably states an ordinary preemption defense, which does not confer removal jurisdiction on this Court.

It is "settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case." *Franchise Tax Bd.*, 463 U.S. at 14. Even "the fact that a defendant might ultimately prove that a plaintiff's claims are preempted does not establish federal jurisdiction." *Opera Plaza Residential Parcel Homeowners Ass'n*, 376 F.3d at 838 (quoting *Caterpillar*, 482 U.S. at 398) (punctuation omitted).

Here, Defendants insist that Plaintiffs' claims are governed by federal common law. Not. of Rem. ¶ 20. Plaintiffs disagree, but even if Defendants were correct that federal common law preempts any state law cause of action involving "global warming-related tort claims" (*id.* ¶ 19), Defendants would at best have a basis for seeking dismissal of Plaintiffs' claims *in state court on remand*—not a basis for removal jurisdiction. *See, e.g.*, *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 949 (9th Cir. 2009) ("Defendants are free to assert in state court a defense of conflict preemption . . . but they cannot rely on that defense to establish federal question jurisdiction.").[6] Because the Clean Air Act does not confer jurisdiction by completely

---

[6] Across numerous contexts, courts have held that the duty to rule on the merits of an ordinary preemption defense lies with the state court following remand. *See, e.g.*, *Rivet v. Regions Bank of La.*, 522 U.S. 470, 478 (1998) (claim preclusion based on federal court judgment "is a defensive plea that provides no basis for removal" and that "a defense is properly made in the state proceedings"); *Lontz v. Tharp*, 413 F.3d 435, 443–44 (4th Cir. 2005) ("[P]reemption arguments are questions that must be addressed in the first instance by the state court in which respondents filed their claims.") (citations and punctuation omitted); *Hendricks v. Dynegy Power Mktg., Inc.*,

SHER EDLING LLP

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND
CASE NOS. 3:17-CV-04929-VC, 3:17-CV-04934-VC, 3:17-CV-04935-VC**                12

preempting state law claims, district courts lack jurisdiction to consider any ordinary preemption defenses the Act might provide. *See, e.g.*, *Cerny v. Marathon Oil Corp.*, No. CIV.A. SA-13-CA-562, 2013 WL 5560483, at *8 (W.D. Tex. Oct. 7, 2013) (because the Clean Air Act did not completely preempt plaintiff's case, court could "not decide in the first instance whether the [Clean Air Act] provides a federal preemption defense to the state-law claims"); *Morrison v. Drummond Co.*, No. 2:14-CV-0406-SLB, 2015 WL 1345721, at *1–*4 (N.D. Ala. Mar. 23, 2015) (remanding because Clean Air Act did not completely preempt mail carrier's state law tort action based on air pollution from industrial facility).

By recharacterizing Plaintiffs' state law claims as federal common-law claims, Defendants attempt to evade not only the rule against removal based on an ordinary preemption defense, but also the rule's limited exception for cases in which federal law completely preempts and therefore replaces state causes of action. As explained below, Defendants fail to satisfy the strict complete preemption criteria, and must not be granted an end-run around them.[7]

### 3. The Clean Air Act Does Not Completely Preempt Plaintiffs' Claims.

After trying their best to avoid the black-letter rule against removal based on an ordinary preemption defense, Defendants finally get around to arguing that Plaintiffs' well-pleaded state law claims are removable under the doctrine of complete preemption. Not. of Rem. ¶¶ 36–48. Defendants' reluctance to lead with this argument is understandable: The requirements for

---

160 F. Supp. 2d 1155, 1160 (S.D. Cal. 2001) ("[E]ven if the Court were to conclude that Congress intended for the Federal Power Act to preempt state law claims, this preemption is, at most, a defense for Defendants to raise in state court.").

[7] *National Farmers Union Insurance Companies v. Crow Tribe of Indians*, 471 U.S. 845 (1985), which Defendants cite (Not. of Rem. ¶¶ 5, 13), does not alter the calculus. The plaintiffs there sued the Crow Tribe in federal district court, seeking to enjoin enforcement of a default judgment entered by the tribal court. *Id.* at 847–48. The Court held that jurisdiction existed over the plaintiff's claims under 28 U.S.C. § 1331 because the plaintiffs themselves "contend[ed] that federal law has divested the Tribe" of the "power to compel a non-Indian property owner to submit to the civil jurisdiction of a tribal court," and thus facially presented a federal question. *Id.* at 852–53. *Crow Tribe*, like *Kivalina* and *AEP*, was filed in federal court on explicitly federal law theories, and involved neither removal jurisdiction, nor the relationship between state laws and federal common law, nor the complete preemption doctrine.

SHER
EDLING LLP

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND
CASE NOS. 3:17-CV-04929-VC, 3:17-CV-04934-VC, 3:17-CV-04935-VC**                13

1    establishing complete preemption are far more stringent than those needed to find ordinary

2    preemption. Indeed, the Supreme Court has expressed great "reluctan[ce] to find th[e]

3    extraordinary pre-emptive power" required for complete preemption, *Metro. Life Ins. Co.*, 481

4    U.S. at 65, encountering only three such statutes in the past half century.[8] It is unsurprising, then,

5    that Defendants are unable to cite a single case holding that the Clean Air Act completely

6    preempts any and all state tort claims related to airborne emissions—not to mention the kind of

7    tortious marketing and promotion conduct at issue in this case. There are, to the contrary, many

8    cases rejecting complete preemption and remanding to state court,[9] and others rejecting ordinary

9    preemption defenses asserted under the Clean Air Act.[10] This case is no exception. Even if the

10

11   [8] *See Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 9–11 (2003) (National Bank Act); *Metro.

12   Life Ins. Co.*, 481 U.S. at 65–66 (Section 502(a) of the Employee Retirement Income Security
     Act of 1974); *Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists & Aerospace

13   Workers*, 390 U.S. 557, 560 (1968) (Section 301 of the Labor Management Relations Act).

14   [9] *See, e.g.*, *Her Majesty The Queen In Right of the Province of Ontario v. City of Detroit*, 874
     F.2d 332, 342–43 (6th Cir. 1989) (denying removal based on complete preemption because "the

15   plain language of the [Clean Air Act's] savings clause . . . clearly indicates that Congress did not
     wish to abolish state control"); *Morrison*, 2015 WL 1345721, at *3–*4 (remanding because "this

16   [state law tort] case does not support a finding that the Clean Air Act has completely preempted
     plaintiff's state common law causes of action"); *Cerny*, 2013 WL 5560483, at *8 ("Plaintiffs'

17   claims are not completely preempted and . . . federal question jurisdiction is lacking.");
     *California ex rel. Sacramento Metro. Air Quality Mgmt. Dist. v. Hardesty Sand & Gravel*, No.

18   2:11-CV-02278 JAM, 2012 WL 639344, at *5 (E.D. Cal. Feb. 24, 2012) (action for civil

19   penalties against operator of mining equipment improperly permitted under state law was not
     removable because "Congress limited [Clean Air Act] preemption to emission standards, and

20   declined to completely preempt the regulation of nonroad engines"); *Gutierrez v. Mobil Oil
     Corp.*, 798 F. Supp. 1280, 1281–86 (W.D. Tex. 1992) (remanding claims against stationary

21   source polluter, finding "[t]he Clean Air Act does not create federal court jurisdiction" and "does

22   not preempt source-state common law claims against a stationary source").

23   [10] *See Bell v. Cheswick Generating Station*, 734 F.3d 188, 198 (3d Cir. 2013), *cert. denied*, 134
     S. Ct. 2696 (2014) (allowing state tort claims to proceed against coal-fired electrical generation

24   facility, holding that "[i]f Congress intended to eliminate such private causes of action, 'its
     failure even to hint at' this result would be 'spectacularly odd'"); *Merrick*, 805 F.3d at 690

25   (allowing claims for nuisance, trespass, and negligence for emissions from whiskey distillery
     because "the Clean Air Act expressly preserves the state common law standards on which

26   plaintiffs sue"); *Keltner v. SunCoke Energy, Inc.*, No. 3:14-CV-01374-DRHPMF, 2015 WL
     3400234, at *4 (S.D. Ill. May 26, 2015); *Bearse v. Port of Seattle*, No. C09-0957RSL, 2009 WL

27   3066675, at *4 (W.D. Wash. Sept. 22, 2009); *Tech. Rubber Co. v. Buckeye Egg Farm, L.P.*, No.

28   2:99-CV-1413, 2000 WL 782131, at *4–*5 (S.D. Ohio June 16, 2000); *Ford v. Murphy Oil*

SHER
EDLING LLP

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND
CASE NOS. 3:17-CV-04929-VC, 3:17-CV-04934-VC, 3:17-CV-04935-VC**                    14

1   Clean Air Act provided a basis for a viable ordinary preemption defense (Plaintiffs contend it

2   does not), the statute does not so completely preempt state law tort claims as to divest state

3   courts of jurisdiction.

4           a.  <u>Defendants Cannot Establish Complete Preemption.</u>

5         The Supreme Court and the Ninth Circuit recognize a narrow "corollary" to the well-

6   pleaded complaint rule when "the pre-emptive force of a statute is so 'extraordinary' that it

7   'converts an ordinary state common-law complaint into one stating a federal claim for purposes

8   of the well-pleaded complaint rule.'" *Caterpillar*, 482 U.S. at 393 (quoting *Metro. Life Ins. Co.*,

9   481 U.S. at 65); *see also Marin Gen. Hosp.*, 581 F.3d at 945 ("Complete preemption removal is

10  an exception to the otherwise applicable rule that a 'plaintiff is ordinarily entitled to remain in

11  state court so long as its complaint does not on its face, affirmatively allege a federal claim."

12  (quoting *Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d

13  393, 398 (3d Cir. 2004)). However, complete preemption arises only in the "extraordinary"

14  situations where "Congress intends not merely to preempt a certain amount of state law, but also

15  intends to transfer jurisdiction of the subject matter from state to federal court." *Wayne v. DHL*

16  *Worldwide Express*, 294 F.3d 1179, 1183–84 (9th Cir. 2002).

17        Defendants argue that Congress intended the Clean Air Act to be the exclusive means

18  through which an aggrieved party can seek relief for harm caused by emissions into the

19  atmosphere. But this turns the Clean Air Act on its head. As the Ninth Circuit explained in

20  *National Audubon Society v. Department of Water*, 869 F.2d 1196, 1203 (9th Cir. 1988):

21          By promulgating the Clean Air Act, Congress has recognized "some" limited

22          federal interest with regard to the nation's air quality. . . . [T]here is not
        "a uniquely federal interest" in protecting the quality of the nation's air. Rather,

23          the primary responsibility for maintaining the air quality rests on the states.

24        Ignoring precedent (and common sense), Defendants rely (Not. of Rem. ¶¶ 40–44)

25  entirely on a provision of the Act that permits individuals to petition the federal government to

26

27  *U.S.A., Inc.*, 750 F. Supp. 766, 772–73 (E.D. La. 1990); *Freeman v. Grain Processing Corp.*, 848

28  N.W.2d 58 (Iowa 2014).

SHER
EDLING LLP

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND**
**CASE NOS. 3:17-CV-04929-VC, 3:17-CV-04934-VC, 3:17-CV-04935-VC**    15

declare "hazardous air pollutants." *See* 42 U.S.C. § 7413(b)(1) & (3). Defendants argue that provision prohibits parties from seeking any remedies in tort for injuries ultimately traceable to air pollution, including greenhouse gases. Not. of Rem. ¶¶ 47-48. But the "exclusive statutory remedy for the regulation of greenhouse gas emissions" to which Defendants refer (*id.* ¶ 48), defines only the process for enforcing violation of emissions permits, which has nothing to do with Plaintiffs' claims. Plaintiffs' Complaints are not an "end-run around a petition for rule-making regarding greenhouse gas emissions" (*id.* ¶ 47), and do not conflict with the Act's permit enforcement provisions (*id.* ¶ 48), because Plaintiffs do not seek to enjoin any emissions, enforce or invalidate any Clean Air Act permit, declare any chemical a hazardous air pollutant, nor create any other restriction whatsoever on air pollution conceivably governed by the Act. The Clean Air Act does not speak at all to the forms of relief Plaintiffs *do* seek, let alone create the sole remedy for Plaintiffs' tort injuries. Defendants' argument flies in the face of the statutory text and binding precedent governing complete preemption.

b. <u>Far From Indicating Congressional Intent to Completely Preempt State Law, the Clean Air Act Repeatedly Emphasizes the Primary Role of the States.</u>

The "touchstone of the federal district court's removal jurisdiction is . . . the intent of Congress." *Metro. Life Ins. Co.*, 481 U.S. at 66. The best way to discern congressional intent is in the text of the statute itself. *CTS Corp. v. Waldburger*, -- U.S. --, 134 S. Ct. 2175, 2185 (2014). Three provisions in the Clean Air Act definitively refute Defendants' contention that Congress intended the Act to completely preempt state law claims related to air-pollution emissions. Those provisions—none of which Defendants even acknowledge—instead establish just the opposite: Congress specifically intended to preserve state law remedies related to air pollution, particularly when such remedies impose standards that are *higher* than those in the Clean Air Act.

First, in enacting and later amending the Clean Air Act, Congress made a statutory finding that reducing air pollution "through any measures . . . is the primary responsibility of States and local governments." 42 U.S.C. § 7401(a)(3). Far from revealing a congressional intent to displace state law measures to address air pollution, that finding reflects Congress's understanding that such measures are important and should continue. When emphasizing that

courts should be cautious about finding congressional intent to preempt (even with respect to ordinary preemption), the Supreme Court has emphasized "that the historic police powers of the States were not [meant] to be superseded by [a federal statute] unless that was the clear and manifest purpose of Congress." *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 365 (2002) (quoting *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995)) (first set of brackets in original). That caution—which is particularly appropriate where, as here, political subdivisions of a State seek to enforce state law in state court—is reflected in the congressional finding in Section 7401(a)(3). *See National Audubon Soc'y*, 869 F.2d at 1203 ("[T]here is not 'a uniquely federal interest' in protecting the quality of the nation's air. Rather, the primary responsibility for maintaining the air quality rests on the states."); *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 725 F.3d 65, 95–96 (2d Cir. 2013) ("Imposing state tort law liability for negligence, trespass, public nuisance, and failure-to-warn—as the jury did here—falls well within the state's historic powers to protect the health, safety, and property rights of its citizens. In this case, therefore, the presumption that Congress did not intend [under the Clean Air Act] to preempt state law tort verdicts is particularly strong."); *accord Pagarigan v. Superior Court*, 102 Cal. App. 4th 1121, 1128 (2002) ("Where (as here) Congress regulates a field historically within the police powers of the states (public health), we proceed from the assumption that state law is *not* superseded unless there is a 'clear and manifest purpose of Congress' to foreclose a particular field to state legislation.").

Second, Congress included a provision stating that, except as otherwise provided in statutory sections not applicable here, nothing in the chapter governing air quality and emissions limitations (which includes the only statutory provision defendants do rely on) "shall preclude or deny the right of any State or political subdivision thereof to adopt or enforce (1) any standard or limitation respecting emissions of air pollutants or (2) any requirement respecting control or abatement of air pollution," except that no State or local government may "adopt or enforce any emission standard or limitation which is less stringent than the standard or limitation" provided for by the Clean Air Act and its implementing regulations. 42 U.S.C. § 7416. Congress thereby made clear that, although the Clean Air Act sets a *floor* for emissions standards and limitations, it

SHER EDLING LLP

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND
CASE NOS. 3:17-CV-04929-VC, 3:17-CV-04934-VC, 3:17-CV-04935-VC
17

does not restrict the rights of States and local governments to create or enforce stricter standards governing emission, control, or abatement of air pollution. Section 7416—a provision Defendants do not even mention—refutes defendants' contention that the Clean Air Act completely preempts any state law efforts to abate air pollution that is not alleged to violate the Clean Air Act.

Third, Congress included another savings clause, which specifies that "nothing in" the chapter governing citizen suits "shall restrict any right which any person (or class of persons) may have under any statute or common law to seek enforcement of any emission standard or limitation or to seek any other relief." 42 U.S.C. § 7604(e). Section 7604 further clarifies that Congress did not intend the Clean Air Act to be the exclusive means of enforcing air-quality standards, whether such standards are found in the Act itself or in some other source of law. *See, e.g.*, *Bell v. Cheswick Generating Station*, 734 F.3d 188, 197–98 (3d Cir. 2013) (explaining that the Clean Air Act "serve[s] as a regulatory floor, not a ceiling," and thus "states are free to impose higher standards on their own sources of pollution, and . . . state tort law is a permissible way of doing so" (citing *Ouellette*, 479 U.S. at 498–99 (interpreting federal Clean Water Act and coming to the same conclusion)).

In addition to those affirmative indications of congressional intent to preserve, rather than displace, state law causes of action related to air pollution, that intent is also apparent in what the Clean Air Act does *not* contain: a private cause of action that could encompass the state law tort claims Plaintiffs assert. The Clean Air Act's citizen-suit provision only creates a right of action for violations of emissions standards or violation of an EPA order, and does not provide a right to compensatory damages. *See* 42 U.S.C. § 7604. Indeed, Defendants do not identify any federal cause of action that would remedy the injuries Plaintiffs assert. The Ninth Circuit has held that "a state-law claim may be recharacterized as a federal claim only when the state-law claim is preempted by federal law *and* when it is apparent from a review of the complaint that federal law provides plaintiff a cause of action to remedy the wrong he asserts he suffered." *Hunter v. United Van Lines*, 746 F.2d 635, 642–43 (9th Cir. 1984). But "[w]hen federal law displaces state law without supplanting it, a plaintiff cannot be deemed to be attempting to avoid a federal cause of

SHER
EDLING LLP

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND**
**CASE NOS. 3:17-CV-04929-VC, 3:17-CV-04934-VC, 3:17-CV-04935-VC**                    18

1    action; there is no federal cause of action to avoid. In such a case, federal preemption operates

2    only as a defense." *Id.* at 643; *see also, e.g.*, *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d

3    1241, 1245–46 (9th Cir. 2009) (finding no complete preemption where the statute "does not

4    provide a federal cause of action, without which complete preemption . . . cannot exist").

5         In the rare cases where the Supreme Court found complete preemption, it relied on a

6    specific federal cause of action that would have encompassed the plaintiff's state law claim and

7    that Congress intended to be the exclusive remedy. *See Beneficial Nat'l Bank*, 539 U.S. at 7–9;

8    *Metro. Life Ins. Co.*, 481 U.S. at 62–63, 65–66; *Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of*

9    *Machinists & Aerospace Workers*, 390 U.S. 557, 560 (1968). Defendants seemingly would have

10   this Court rely in unspecified ways on the Clean Air Act's regulatory scheme as a whole—an

11   approach that finds no support in controlling precedent—even though Defendants simultaneously

12   assert that the regulatory regime does *not* provide any remedy for claims like Plaintiffs'. The

13   absence of such a cause of action is further evidence that Congress did not intend to displace

14   Plaintiffs' state law claims.

15        In sum, far from indicating congressional intent to completely preempt state law causes

16   of action related to air pollution (including those seeking abatement of air pollution), the Clean

17   Air Act clearly expresses the opposite, *i.e.*, that Congress intended to preserve state law remedies

18   related to air pollution, an area Congress considered to be the primary responsibility of states and

19   local governments. In that context, there is no basis for finding complete preemption. *See, e.g.*,

20   *Her Majesty The Queen In Right of the Province of Ontario v. City of Detroit*, 874 F.2d 332, 343

21   (6th Cir. 1989) (finding no complete preemption because the Clean Air Act's savings clauses

22   "compel[] the conclusion" that the Act did not preempt plaintiffs' state law claims); *National*

23   *Audubon Soc.*, 869 F.2d at 1203 (same); *In re MTBE*, 725 F.3d at 95–96 (same). Because

24   Defendants have failed to identify any federal law completely preempting Plaintiffs' state law

25   claims, their assertions of conflict with federal law provide no basis for removal. Any ordinary

26   preemption defense must be presented to, and decided in, state court.

27

28

SHER
EDLING LLP

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND
CASE NOS. 3:17-CV-04929-VC, 3:17-CV-04934-VC, 3:17-CV-04935-VC**                     19

1

2

### B. Plaintiffs' Complaints Do Not Raise Any Substantial, Disputed Federal Questions.

3

4

Defendants' second argument, invoking *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005), dramatically overreads the scope of jurisdiction federal courts may assert over state law claims, and misconstrues the relief Plaintiffs seek. Only two types of actions invoke federal question jurisdiction: (1) those asserting causes of action created by federal law and, much less commonly, (2) those asserting state law causes of action that "arise under" federal law. *Grable*, 545 U.S. at 312. Plaintiffs' claims do not fall into the first category because, on their face, they are not federal causes of action. They also do not come within the second category, because the causes of action arise under California law. *Grable* and its progeny instruct that a state law cause of action arises under federal law for purposes of removal only when the plaintiff's affirmative state law case "will necessarily require application" of federal law, such that it cannot meet its *prima facie* burden without reliance on a federal standard. *See Gunn v. Minton*, 568 U.S. 251, 259 (2013). *Grable* does not, however, alter the bedrock rule that federal *defenses* cannot create removal jurisdiction (*see supra* Section V.A.2), no matter how important those defenses may prove to the litigation.

17

Here, the Plaintiffs' "right to relief under state law" does not "requir[e] resolution of a substantial question of federal law in dispute between the parties," *Franchise Tax Bd.*, 463 U.S. at 13, and therefore does not "arise under" federal law within the meaning of *Grable*. Defendants do not and cannot argue that Plaintiffs' *prima facie* case turns on proving a violation of federal law, or even interpreting federal law. Defendants instead contend that Plaintiffs' wholly state law claims are *unavailable* based on a flotilla of purported affirmative federal defenses ranging from the actions of federal regulators to the First Amendment. The standard Defendants advocate would mutate *Grable* into a free-floating inquiry into how much interpretation of federal law the trial court will likely encounter in the course of the litigation, whether or not those issues appear on the face of the complaint. Defendants have failed to show that the Complaints necessarily invoke disputed and substantial questions of federal law, and removal under *Grable* is improper.

28

SHER EDLING LLP

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND CASE NOS. 3:17-CV-04929-VC, 3:17-CV-04934-VC, 3:17-CV-04935-VC**                    20

### 1.    Plaintiffs' Complaints Do Not "Necessarily Raise" Any "Actually Disputed" Issues of Federal Law.

The Supreme Court has explained that the "'special and small' category of cases in which arising under jurisdiction still lies," absent a federal cause of action, is limited to those cases that "really and substantially involv[e] a dispute or controversy respecting the validity, construction or effect of [federal] law." *Gunn*, 568 U.S. at 258 (quoting *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 699 (2006)); *Grable*, 545 U.S. at 313 (quoting *Shulthis v. McDougal*, 225 U.S. 561, 569 (1912)). Federal jurisdiction over a state law claim is thus only available if a federal issue is: "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. None of those factors is met here.

The Complaints here do not "necessarily raise" any "disputed" issue of federal law, substantial or otherwise. A federal question is necessarily raised and actually disputed only where a "question of federal law is a *necessary element* of one of the well-pleaded state claims." *Franchise Tax Bd.*, 463 U.S. at 13 (emphasis added). "When a claim can be supported by alternative and independent theories—one of which is a state law theory and one of which is a federal law theory—federal question jurisdiction does not attach because federal law is not a necessary element of the claim." *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 675 (9th Cir. 2012) (quoting *Rains v. Criterion Sys., Inc.*, 80 F.3d 339, 346 (9th Cir. 1996)). Where there is "no 'basic' or 'pivotal' federal question that impinges on [a state law] right to relief," a federal question is not "necessarily raised." *Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1046 (9th Cir. 2003), *as amended* (Sept. 22, 2003).

The rights and duties Plaintiffs seek to vindicate, and their entitlement to relief, all stem entirely from California law and do not incorporate or depend on any federal standards. Plaintiffs' First, Second, and Fifth causes of action rely on Defendants' creation of and contribution to a nuisance, as defined under California law. Compl. ¶¶ 176–99, 225–35; Cal. Civil Code §§ 3479, 3480–81, 3491, 3493, 3501–03 (defining public and private nuisance and codifying rights to relief); *County of Santa Clara*, 137 Cal. App. 4th at 304–06 (elements of

SHER EDLING LLP

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND
CASE NOS. 3:17-CV-04929-VC, 3:17-CV-04934-VC, 3:17-CV-04935-VC**                    21

public nuisance claim); *San Diego Gas & Elec. Co. v. Superior Court*, 13 Cal. 4th 893, 937–38 (1996) (elements of private nuisance claim). The Third and Fourth causes of action rely on Defendants' manufacturing, marketing, and selling defective products, and failing to warn of known defects, all as defined under California law and in violation of duties imposed by California law. Compl. ¶¶ 200–24; *Anderson v. Owens-Corning Fiberglas Corp.*, 53 Cal. 3d 987, 995–1003 (1991) (defining strict product liability for design defect and failure to warn ). The Sixth and Seventh causes of action allege that Defendants negligently designed, manufactured, marketed and sold defective and dangerous products, and negligently failed to warn of known defects, all in violation of duties imposed by California law. Compl. ¶¶ 236–55; Cal. Civil Code §§ 1714 (defining negligence); *Beechnut Nutrition*, 185 Cal. App. 3d at 141 (defining duty to exercise reasonable care in product design). Finally, the Eighth cause of action alleges Defendants' conduct caused an unlawful, unconsented intrusion onto Plaintiffs' real property, and interfered with their use and quiet enjoyment thereof, violating California law duties. Compl. ¶¶ 256–64; *Interlake Steel*, 32 Cal. 3d at 233 (defining trespass). None of Plaintiffs' claims depends on federal law to create the right to relief, none incorporates a federal tort duty that Defendants allegedly violated, and none turns on the application or interpretation of federal law in any way. In short, there is no necessary, disputed federal law issue.

Courts routinely remand where, as here, the case takes place against a factual backdrop of federal regulation but none of Plaintiffs' claims relies on a federal right to relief or turns on interpreting federal law. *Oregon ex rel. Kroger v. Johnson & Johnson*, 832 F. Supp. 2d 1250 (D. Or. 2011), is instructive. There, the State sued manufacturers of over-the-counter painkillers on state law grounds in Oregon state court, alleging that the manufacturers failed to disclose that some caplets were defective and instead secretly repurchased potentially defective bottles. *Id.* at 1253. The defendants removed, asserting that the complaint called into question whether the Food, Drug, and Cosmetic Act required a public recall and the FDA's decision not to order one, and therefore necessarily raised substantial federal law questions. *Id.* at 1256. The court rejected this argument, concluding that the federal issues Defendants raised were "only tangential to Plaintiff's claims" and reasoning that

SHER
EDLING LLP

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND
CASE NOS. 3:17-CV-04929-VC, 3:17-CV-04934-VC, 3:17-CV-04935-VC**

22

[t]he complaint does not turn on whether Defendants should have conducted a public recall or whether FDA officials should have required one. Plaintiff has alleged that Defendants undertook a "secret" recall not to challenge that conduct as a violation of federal law, but only as evidence of Defendants' knowledge that their product may have been defective, as well as evidence of Defendants' decision not to disclose that information publicly. . . . Similarly, Plaintiff could prove its [state law consumer protection] claims without drawing into question the FDA's handling of the Motrin recall.

*Id.* at 1255–56. The court therefore granted the motion to remand. *Id.* at 1260. Likewise here, Plaintiffs' causes of action do not depend on any violation of federal law to create a right to relief: Though *factual* issues may arise touching on Defendants' interactions with the federal government, the complaints neither assert nor depend on any violations of federal *law*.[11]

---

[11] Many cases stand for the same proposition, across circuits and regulatory contexts. *See, e.g.*, *Becker v. Ute Indian Tribe of the Uintah & Ouray Reservation*, 770 F.3d 944, 947–48 (10th Cir. 2014) (no federal question jurisdiction over a breach of contract claim against Indian Tribe simply because contract required approval from U.S. Secretary of the Interior); *K2 Am. Corp. v. Roland Oil & Gas, LLC*, 653 F.3d 1024, 1032 (9th Cir. 2011) (no federal jurisdiction where plaintiff's "alleged ownership of [a certain federally approved oil and gas] lease turn[ed] on the success of its state common law and statutory claims," because "[t]he mere fact that the Secretary of the Interior must approve oil and gas leases does not raise a federal question"); *Shanks v. Dressel*, 540 F.3d 1082, 1093 (9th Cir. 2008) (no federal jurisdiction where plaintiff alleged defendant city violated its own municipal code with respect to building permit at federally registered historic place, but claim turned on compliance with municipal code only and not compliance with federal regulations governing historic places); *Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage Leasehold & Easement in the Cloverly Subterranean, Geological Formation*, 524 F.3d 1090, 1102 (9th Cir. 2008) (no "arising under" jurisdiction for state tort claims brought by natural gas pipeline operator alleging unlawful drainage of natural gas from underground formation, "because no provision of the [federal Natural Gas Act] constitutes an essential element of those claims"); *Bennett v. Sw. Airlines Co.*, 484 F.3d 907, 912 (7th Cir. 2007) (reversing denial of remand in personal injury case stemming from airline crash: despite extensive federal regulation of air travel, the fact "that some standards of care used in tort litigation come from federal law does not make the tort claim one 'arising under' federal law"); *Kirk v. Palmer*, 19 F. Supp. 3d 707, 708–12 (S.D. Tex. 2014) (no federal jurisdiction over state law breach of contract claim, even though contract related solely to federal patent, because state contract law and fiduciary principles controlled right of recovery); *In re Vioxx Prods. Liab. Litig.*, 843 F. Supp. 2d 654, 669 (E.D. La. 2012) (granting State of Kentucky's motion to remand where its state law consumer protection claim alleged that defendant misled both the FDA and the general public, such that violation of FDA reporting requirements "may not be necessary to resolution of Kentucky's claims," and "even if Kentucky did attempt to prove that Merck failed to comply with FDA disclosure regulations, that federal question would be resolved in the context of whether that conduct constituted a violation of *Kentucky* law").

SHER EDLING LLP

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND CASE NOS. 3:17-CV-04929-VC, 3:17-CV-04934-VC, 3:17-CV-04935-VC**                    23

Defendants do not assert that Plaintiffs' claims *do* depend on the interpretation of federal law, but insist instead that some elements of some of Plaintiffs' causes of action *resemble* considerations made by federal agents executing their regulatory duties. Specifically, Defendants surmise that Plaintiffs' nuisance claims will require "the same analysis of benefits and impacts" from fossil fuels that federal agencies conduct under several statutes, Not. of Rem. ¶¶ 26–28, and that Defendants' failure to comply with the Toxic Substances Control Act, campaign of misinformation, and sale of products to the federal government all implicate federal decision making, *id.* ¶¶ 29–32. Even if any of those assertions were accurate, Defendants' argument at most raises a conflict preemption defense, which is outside *Grable*'s scope and does not make any federal law issue "actually disputed." "All sorts of burdens and obligations are defined in federal law. If that alone sufficed for federal jurisdiction, routine applications of the Supremacy Clause could be grounds for removal. That is not what *Grable* stands for." *In re Roundup Prods. Liab. Litig.*, No. 16-MD-02741-VC, 2017 WL 3129098, at *1 (N.D. Cal. July 5, 2017).

In every case Defendants cite, the plaintiff's claims did not merely touch on a defendant's federally regulated conduct; instead, the right to relief itself grew out of federal regulation. In *Board of Commissioners of Southeast Louisiana Flood Protection Authority. v. Tennessee Gas Pipeline Co.*, 850 F.3d 714, 720–21 (5th Cir. 2017), *petition for cert. filed*, No. 17-99 (July 19, 2017), for example, the plaintiff alleged that various defendant companies had increased regional flood risk by dredging an extensive network of canals to facilitate fuel transport from oil and gas wells. Even though the plaintiff's claims were framed under state law, the court found removal proper because the complaint itself "dr[ew] on federal law as the *exclusive basis* for holding Defendants liable for some of their actions," which were not subject, under Louisiana law, to the duties the plaintiffs sought to enforce—namely backfilling the canals and performing other regional flood mitigation. *Id.* at 722–23 (emphasis added). Therefore, "[t]he absence of any state law grounding for the duty that the Board would need to establish for the Defendants to be liable means that that duty would have to be drawn from federal law." *Id.* at 723. Removal was therefore proper because the plaintiff's nuisance and negligence claims "[could not] be resolved without a determination whether multiple federal statutes create a duty of care that does not

SHER
EDLING LLP

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND
CASE NOS. 3:17-CV-04929-VC, 3:17-CV-04934-VC, 3:17-CV-04935-VC**                    24

1  otherwise exist under state law." *Id.* Here, by contrast, the relief Plaintiffs seek, and the duties

2  they seek to enforce, are drawn from traditional precepts of California tort law.[12]

3       Defendants cite in passing to *In re National Security Agency Telecommunications*

4  *Records Litigation*, 483 F. Supp. 2d 934 (N.D. Cal. 2007) (hereinafter "*In re NSA*"), for the

5  proposition that a sufficiently important federal interest, standing alone, confers jurisdiction

6  under *Grable* (Not. of Rem. ¶ 29). But *In re NSA* turned on the "unique role" played by the state

7  secrets privilege and the federal government's direct interest in the litigation. *Id.* at 942. The

8  plaintiffs there sued various telephone service providers in California state court for allegedly

9  disclosing records to the National Security Agency in violation of state law. *Id.* at 937. The

10  defendants removed, arguing in relevant part that removal was proper under *Grable* because the

11  plaintiffs' claims necessarily implicated the state secrets doctrine. *Id.* at 941–42. The court found

12  that "the state secrets privilege plays a unique role in the present cases" because the privilege

13

---

14  [12] All of Defendants' other citations present the same issue: a nominally state law cause of action
that depended entirely on federal law to create the right to relief. *See, e.g.*, *Buckman Co. v.*

15  *Plaintiffs' Legal Comm.*, 531 U.S. 341, 353 (2001) (finding that plaintiff's "fraud on the FDA"
claims "exist[ed] solely by virtue of the [federal] disclosure requirements," unlike "certain state-

16  law causes of actions that parallel federal safety requirements" but do not depend on a substantial
federal question); *Pet Quarters, Inc. v. Depository Tr. & Clearing Corp.*, 559 F.3d 772, 779 (8th

17  Cir. 2009) (affirming removal of state securities violation claim challenging federally approved
"Stock Borrow Program," where plaintiff alleged program "by its mere existence, hinders

18  competition," and therefore "directly implicate[d] actions taken by the [SEC] in approving the
creation of the Stock Borrow Program and the rules governing it"); *Bader Farms, Inc. v.*

19  *Monsanto Co.*, No. 1:16-CV-299 SNLJ, 2017 WL 633815, at *2–3 (E.D. Mo. Feb. 16, 2017)
(plaintiff's fraudulent concealment claims rested on defendant's alleged withholding of material

20  information from the Department of Agriculture, and therefore necessarily raised a federal
question because the information defendants were required to disclose was defined by federal

21  regulations that "in large part, . . . identif[y] the duty to provide information and the materiality

22  of that information"); *Warren Boyeson & Christine Boyeson v. S.C. Elec. & Gas Co.*, No. 3:15-
CV-04920-JMC, 2016 WL 1578950, at *6 (D.S.C. Apr. 20, 2016) (denying motion to remand

23  where plaintiff's state law negligence claim "[did] not identif[y] any source for the duty of care
owed by [defendant] to properly manage and operate the Lake Murray Dam," and the only

24  possible source of the alleged duties was federal); *W. Virginia ex rel. McGraw v. Eli Lilly & Co.*,

25  476 F. Supp. 2d 230, 233 (E.D.N.Y. 2007) (removal jurisdiction existed over case challenging
Medicaid reimbursement rates because "[r]esolution of the question of the state's obligation to

26  reimburse its insureds for Zyprexa, using funds largely provided by the federal government, is

27  essential to the state's theory of damages and presents a substantial and disputed federal issue
under *Grable*").

28

---

SHER
EDLING LLP

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND**
**CASE NOS. 3:17-CV-04929-VC, 3:17-CV-04934-VC, 3:17-CV-04935-VC**

25

1    "requires dismissal if national security concerns prevent plaintiffs from proving the *prima facie*

2    elements of their claim," and observed that the federal government had already appeared in the

3    action and stated its intention to assert the privilege. *Id.* at 942. Under the unique circumstances

4    of the case, disputed questions regarding the state secrets privilege were "embedded" in the

5    complaint itself, and the government's substantial interest in having those questions heard in

6    federal court justified removal. *Id. In re NSA* bears no resemblance to the cases now before the

7    Court.

8         In sum, Plaintiffs' claims are traditional state law torts, underpinned by duties and

9    remedies supplied entirely by California law. No right to relief alleged in the Complaint depends

10   on the application or interpretation of federal law, and Defendants have not shown otherwise.

11            **2.    Defendants Have Not Shown That the Complaint Raises Questions of
                      Federal Law That Are "Substantial" to the Federal System as a Whole.**
12

13        Even if Defendants had demonstrated that a question of federal law were necessarily

14   raised and actually disputed, they have not met their burden to prove it is "substantial" within

15   *Grable*'s meaning. Courts determine whether a federal issue is "substantial" under *Grable* by

16   "look[ing] . . . to the importance of the issue to the federal system as a whole." *Gunn*, 568 U.S. at

17   260. The Supreme Court has identified "three nonexclusive factors that may help to inform the

18   substantiality inquiry, none of which is necessarily controlling." *NeuroRepair, Inc. v. Nath Law*

19   *Grp.*, 781 F.3d 1340, 1345 (Fed. Cir. 2015).

20        First, a pure question of law is more likely to be a substantial federal question.
          Second, a question that will control many other cases is more likely to be a
21        substantial federal question. Third, a question that the government has a strong
          interest in litigating in a federal forum is more likely to be a substantial federal
22        question.

23   *MDS (Canada) Inc. v. Rad Source Techs., Inc.*, 720 F.3d 833, 842 (11th Cir. 2013) (citations

24   omitted). "[F]act-bound and situation-specific" questions "are not sufficient to establish arising

25   under jurisdiction." *Gunn*, 568 U.S. at 263.

26        Defendants do not even attempt address any of the substantiality factors the Supreme

27   Court has provided. They present a jumble of federal standards that might become relevant (*see*

28   *generally* Not. of Rem. ¶¶ 23–35), but do not identify any determinative "pure question of law."

SHER
EDLING LLP

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND
CASE NOS. 3:17-CV-04929-VC, 3:17-CV-04934-VC, 3:17-CV-04935-VC**                    26

1    *See MDS (Canada) Inc.*, 720 F.3d at 842. The only causes of action Defendants specifically

2    mention—nuisance and strict product liability—by Defendants' own reasoning require detailed,

3    fact-bound "risk-utility balancing." Not. of Rem. ¶¶ 26, 47.[13] Defendants also do not point to any

4    aspect of this case that will control many other cases raising the same purported federal issues.

5    The most Defendants assert is that the nuisance and product liability claims will require "the

6    same analysis of benefits and impacts" that some federal agencies conduct pursuant to federal

7    regulations. Not. of Rem. ¶¶ 27, 47. But Plaintiffs do not ask that those federal regulatory

8    decisions be amended or supplanted at all, and Defendants do not explain how the jury's

9    determinations on those questions would control any federal law issue in future cases. Finally,

10   Defendants cannot show that the federal government has any interest in litigating this matter in a

11   federal forum, for the simple reason that the federal government is not—and will not be—a

12   party. Ultimately, Defendants have not met their burden to show that any federal issue that may

13   arise in this case is "substantial" under *Grable*.

14
15          **3.      Congress Has Struck the Balance of Judicial Responsibility in Favor of
                      State Courts Hearing State Law Claims.**

16          Even if the other *Grable* factors were satisfied, removal would still be improper because

17   Congress has struck the jurisdictional balance in favor of Plaintiffs' claims being heard in state

18   court. Although determining the division of labor between state and federal courts requires

19   "sensitive judgments about congressional intent, judicial power, and the federal system," *Nevada

20   v. Bank of Am. Corp.*, 672 F.3d 661, 676 (9th Cir. 2012), the Supreme Court has provided clear

21   guidance. "[T]he combination of no federal cause of action and no preemption of state remedies"

22   is "an important clue to Congress's conception of the scope of jurisdiction to be exercised under

23   § 1331," and indicates that federal jurisdiction is not specially favored. *Grable*, 545 U.S. 318.

24   "To find jurisdiction where there is no private federal cause of action 'flout[s], or at least

25

26   ---
     [13] *See San Diego Gas & Electric Co.*, 13 Cal. 4th at 938 (unreasonableness element of nuisance
     claim "is a question of fact"); *Barker v. Lull Eng'g Co.*, 20 Cal. 3d 413, 425–26 (1978)
27   (definition of "defect" is question of law, but whether a product is defective is finding of fact for
     the jury).
28

SHER
EDLING LLP

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND**                    27
**CASE NOS. 3:17-CV-04929-VC, 3:17-CV-04934-VC, 3:17-CV-04935-VC**

1    undermine[s], congressional intent.'" *Glanton v. Harrah's Entm't, Inc.*, 297 F. App'x 685, 687

2    (9th Cir. 2008) (quoting *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 812 (1986)).

3           Defendants ignore this factor in their Notice of Removal. As explained above, however,

4    the Clean Air Act affirmatively *declares* the "primary" role of the states in protecting air quality

5    (42 U.S.C. § 7401(a)(3)), and twice expressly *preserves* rights of action existing under state law.

6    *See supra* Section V.A.2*; 42 U.S.C. §§ 7416, 7604(e). The Clean Air Act also does not provide a

7    private right of action akin to Plaintiffs' claims that provides the remedies Plaintiffs seek,

8    providing additional proof that Congress did not intend the district courts to serve as the primary

9    forum to resolve such claims.[14] Under *Grable*'s plain terms, the "congressionally approved

10   balance of federal and state judicial responsibilities" here favors state court jurisdiction. *Grable*,

11   545 U.S. 314. Indeed, redressing the kinds of knowing marketing and promotion campaigns

12   undertaken by defendants here falls directly within the traditional police power of the states. *See*

13   *In re MTBE Prods. Liab. Litig.*, 488 F.3d at 133–34 (allowing government entity to seek

14   monetary relief to remedy and prevent environmental damage); *accord, e.g.*, *California v. Kinder*

15   *Morgan Energy Partners, L.P.*, 569 F. Supp. 2d 1073, 1093 (S.D. Cal. 2008) (governmental

16   plaintiffs could recover punitive damages on tort claims against private defendants, even when

17   such entity wielded a police power to punish and deter wrongdoers); *City of New York v. Beretta*

18

19   [14] Defendants gesture toward a number of other statutes for the proposition that energy regulation
20   is a national concern, but none of them shows Congress intended a federal forum for every injury
     related in any way to energy production. The Surface Mining Control and Reclamation Act's
21   savings clauses preserve both "any State law or regulation . . . which provides for more stringent
     land use and environmental controls and regulations of surface coal mining and reclamation
22   operation than do the provisions of this chapter," and "any right which any person (or class of
     persons) may have under any statute or common law." 30 U.S.C. §§ 1255, 1270(e). It does create
23   a private right of action for any person "injured in his person or property through violation by
     any operator of any rule, regulation, order, or permit issued pursuant to this chapter," but no such
24   injury is alleged here. *Id.* at § 1270(f). The Energy Reorganization Act established the Energy
     Research and Development Administration and Nuclear Regulatory Commission, and the only
25   substantive rights it addresses are whistleblower protection for nuclear safety employees. *See*
     *generally* 42 U.S.C. §§ 5801 *et seq.*; *id.* at §§ 5851–53 (whistleblower protection). Finally, the
26   Mining and Minerals Policy Act and the chapter in which it appears provides certain rights
     related to procuring and challenging land patents and mining claims that have nothing to do with
27   tort claims arising from pollution. *See* 30 U.S.C. §§ 21a, 29–32, 54.

28

SHER EDLING LLP

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND**
**CASE NOS. 3:17-CV-04929-VC, 3:17-CV-04934-VC, 3:17-CV-04935-VC**                    28

*U.S.A. Corp.*, 401 F. Supp. 2d 244, 251 (E.D.N.Y. 2005) (holding that city had standing to assert public nuisance tort claim against gun manufacturers based upon its police powers), *rev'd on other grounds*, 524 U.S. 384 (2d Cir. 2008); *United States v. Oil Transp. Co.*, 172 B.R. 834, 836 (E.D. La. 1994) (holding that police or regulatory power exception to automatic stay applies when government entity seeks equitable relief, monetary damages, or both); *United States v. Hooker Chems. & Plastics Corp.*, 722 F. Supp. 960 (W.D.N.Y. 1989) (entering summary judgment on public nuisance tort claim and finding that assumption of risk doctrine did not bar liability where claim was being asserted by a governmental entity in an exercise of its police power with the purpose of protecting human health); *San Remo Hotel L.P. v. City & Cnty. of San Francisco*, 27 Cal. 4th 643, 701 (2002) (citing California Public Nuisance Statute as example of fact that "[t]he law has long recognized, for example, that government might, in the exercise of the police power, act to proscribe a nuisance").

Courts have applied this reasoning in other statutory contexts, most notably refusing jurisdiction over state law consumer protection claims alleging that a product is mislabeled under the federal Food, Drug, and Cosmetic Act, which does not create a private right of action. *See, e.g.*, *Moore v. McKesson Corp.*, No. 17-CV-03784-VC, 2017 WL 3449055, at *1 (N.D. Cal. Aug. 11, 2017) ("Congress's deference to state law and state courts on actions dealing with FDA-regulated products demonstrates that Congress had no affirmative intention of federalizing the entire category of cases into which this dispute falls."); *People v. Monster Beverage Corp.*, No. C 13-2500 PJH, 2013 WL 5273000, at *1 (N.D. Cal. Sept. 18, 2013) ("[E]xercising federal jurisdiction over this case would allow parties to end-run around the FDCA's lack of a private right of action . . . ."); *see also Wander v. Kaus*, 304 F.3d 856, 859 (9th Cir. 2002) (where plaintiff brought state law damages claim premised on violation of Americans with Disabilities Act, but Act itself created cause of action only for injunctive relief and not damages, "exercise of federal-question jurisdiction . . . would fly in the face of clear congressional intent").

SHER
EDLING LLP

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND
CASE NOS. 3:17-CV-04929-VC, 3:17-CV-04934-VC, 3:17-CV-04935-VC**                    29

4.   **Defendants' Laundry List of Federal Defenses Does Not Provide for Federal Jurisdiction.**

Defendants present a non-exclusive list of seven federal law issues they assert will crop up in the litigation, but none provides a basis for removal jurisdiction because they are all defenses. Defendants admit that the seven topics they identify are not "strictly jurisdictional," but nevertheless attempt to obscure that they are all merely affirmative defenses based on federal statutes or the Constitution. *See* Not. of Rem. ¶ 33. Specifically, Defendants preview defenses based on the First Amendment; federal Due Process; the Clean Air Act's displacement of federal common law; the Commerce Clause; the foreign affairs doctrine; "whether a state court may review and assess the validity of acts of foreign states"; and some undisclosed federal laws "relating to the ownership and control of land" at locations such as coasts and interstate highways. *Id.* Couching this list of "federal issues" as "notable" does not bring it within *Grable*'s limited scope, and Defendants' admission that they are not "strictly jurisdictional" surrenders the argument: not one of the issues Defendants identify is "a necessary element of one of the well-pleaded state claims," because they are all, instead, defenses. *See Franchise Tax Bd.*, 463 U.S. at 13. At bottom, "*Grable* did not implicitly overturn the well-pleaded complaint rule," and "a state-law claim will present a justiciable federal question only if it satisfies *both* the well-plead complaint rule *and* passes [*Grable*'s] 'implicates significant federal issues' test." *Cal. Shock Trauma Air Rescue*, 636 F.3d at 542. The hodgepodge of issues in Paragraph 33 of the Notice does not appear on the face of the Complaints and cannot impart "arising under" jurisdiction. *See also, e.g., Ohio ex rel. Skaggs v. Brunner*, 549 F.3d 468, 478–79 (6th Cir. 2008) ("specter of [federal] equal protection problem" raised by challenge to Ohio Secretary of State's ballot-counting procedure did not create removal jurisdiction because it was "at best a federal defense that the Secretary may or may not wish to inject into the case in the Ohio courts" on remand).

5.   **Defendants' Invocation of Foreign Relations Is a Red Herring and Not a Basis for Federal Jurisdiction.**

Lastly, Defendants argue that Plaintiffs' claims are federal in character because they will "intrude upon both foreign policy and carefully balanced regulatory considerations at the national level, including the foreign affairs doctrine." Not. of Rem. ¶ 34. The assertion that

SHER EDLING LLP

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND**
**CASE NOS. 3:17-CV-04929-VC, 3:17-CV-04934-VC, 3:17-CV-04935-VC**          30

1   federal subject matter jurisdiction exists because Plaintiffs have purportedly attempted to usurp

2   federal foreign relations power fails for at least two reasons: First, the foreign affairs doctrine,

3   like the myriad other federal issues Defendants raise, is merely an ordinary preemption defense

4   outside *Grable*'s scope. Second, even if foreign affairs preemption ever could serve as a basis for

5   "arising under" jurisdiction, Defendants' foreign affairs argument is specious, not least because it

6   wildly overstates the scope of relief Plaintiffs seek, which is money damages and abatement

7   measures to redress real property injuries within Plaintiffs' geographic jurisdictions. No form of

8   relief Plaintiffs seek would touch foreign policy.

9          "Under the foreign affairs doctrine, state laws that intrude on th[e] exclusively federal

10   power [to administer foreign affairs] are preempted, under either the doctrine of conflict

11   preemption or the doctrine of field preemption." *Gingery v. City of Glendale*, 831 F.3d 1222,

12   1228 (9th Cir. 2016); *Movsesian v. Victoria Versicherung AG*, 670 F.3d 1067, 1071 (9th Cir.

13   2012). As discussed, however, "[a] federal law defense to a state law claim does not confer

14   jurisdiction on a federal court, even if the defense is that of federal preemption and is anticipated

15   in the plaintiff's complaint." *Valles v. Ivy Hill Corp.*, 410 F.3d 1071, 1075 (9th Cir. 2005). "Just

16   as raising the specter of political issues cannot sustain dismissal under the political question

17   doctrine, neither does a general invocation of international law or foreign relations mean that an

18   act of state is an essential element of a claim." *Provincial Gov't of Marinduque*, 582 F.3d at 1091

19   (reversing denial of motion to remand).

20          Even if it were implicated on the face of the Complaints, the foreign affairs doctrine

21   fundamentally does not create a basis for removal jurisdiction because it is a federal preemption

22   defense. *See, e.g.*, *Movsesian*, 670 F.3d at 1071; *Valles*, 410 F.3d at 1075. Unsurprisingly, none

23   of the cases Defendants cite even addresses the foreign affairs doctrine as a basis for removal

24   jurisdiction under *Grable*. Nor does the doctrine provide a basis for federal question jurisdiction,

25   since foreign policy is not within the judicial branch's competency to begin with:

26          Because such political judgments are not within the competence of either state or
          federal courts, we can see no support for the proposition that federal courts are
27          better equipped than state courts to deal with cases raising such concerns. . . . If
          federal courts are so much better suited than state courts for handling cases that

might raise foreign policy concerns, Congress will surely pass a statute giving us that jurisdiction.

*Patrickson v. Dole Food Co.*, 251 F.3d 795, 804 (9th Cir. 2001), *aff'd in part, cert. dismissed in part*, 538 U.S. 468 (2003). *Patrickson* dovetails with the general rule that ordinary preemption defenses do not create removal jurisdiction because state and federal courts are equally capable of entertaining preemption defenses. Even if Defendants' arguments accurately portrayed the allegations in the Complaints, they would still not provide a basis for removal jurisdiction.

Defendants' depiction of the relief requested in the Complaints is as incorrect as their description of the governing law. "To intrude on the federal government's foreign affairs power, a [municipality's] action must have more than some incidental or indirect effect on foreign affairs," *Gingery*, 831 F.3d at 1230, and the Complaints do not come close to meeting that standard.[15] Defendants' assertion that the Complaints "see[k] to govern extraterritorial conduct and encroach on the foreign policy prerogative of the Federal Government's executive branch as to climate change treaties" (Not. of Rem. ¶ 34) is patently false. Plaintiffs do not seek injunctive relief against any party, foreign or domestic; do not seek to modify any greenhouse gas regulation, law, or treaty, foreign or domestic; and surely do not "see[k] to regulate greenhouse gas emissions worldwide, far beyond the borders of the United States." Not. of Rem. ¶ 34. Plaintiffs request only damages, and abatement of the nuisances within their borders.

Even the public nuisance abatement remedies Plaintiffs seek in the name of the People of the State of California are necessarily limited to the geographic limits of Plaintiffs' respective jurisdictions. Plaintiffs are authorized to bring claims "in the name of the people of the State of California to abate a public nuisance" pursuant to Code Civ. Proc. § 731, but courts have held

---

[15] The cases defendants cite are factually miles apart from this one and all involved states' attempts to directly regulate aliens or conduct of foreign sovereigns. *See Hines v. Davidowitz*, 312 U.S. 52, 65–68 (1941) (states may not place registration requirements on immigrants that conflict with federal immigration standards); *United States v. Pink*, 315 U.S. 203, 231–32 (1942) (state of New York could not "refus[e] to give effect to or recogni[ze]" nationalization of private property by Soviet Government "in the face of a disavowal by the United States of any official concern with that program").

SHER
EDLING LLP

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND
CASE NOS. 3:17-CV-04929-VC, 3:17-CV-04934-VC, 3:17-CV-04935-VC**                    32

1    that this abatement authority extends only to the geographic boundaries of the local jurisdiction.

2    Thus, with respect to city attorneys acting under Section 731, "the direct beneficiaries of the

3    action *must* be the residents of the city whom the city attorney represents, otherwise, the city

4    attorney would not have jurisdiction to act in the first instance." *California v. M & P Invs.*, 213

5    F. Supp. 2d 1208, 1216 (E.D. Cal. 2002), *aff'd in part, dismissed in part*, 46 F. App'x 876 (9th

6    Cir. 2002). Similarly, "the grant of prosecutorial power to district attorneys does not include the

7    right to restrain the powers of other public officials and agencies" by, for example, stipulating to

8    a judgment or settlement that would prevent other law enforcement bodies from acting. *Id.* at

9    1215 (citing *People v. Hy-Lond Enters. Inc.*, 93 Cal. App. 3d 734, 753 (1979)). Plaintiffs do not

10    seek to regulate conduct across the globe, and would not have the authority to do so if they tried.

11         Last, Defendants cannot manufacture federal jurisdiction merely by invoking a doctrine

12    that cannot conceivably apply here. Foreign affairs field preemption only applies where a state

13    "take[s] a position on a matter of foreign policy with no serious claim to be addressing a

14    traditional state responsibility." *Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 420 n.11 (2003).

15    The state must have purported to make its own foreign policy. Here, the only state action is the

16    creation of generally-applicable tort claims, an area of traditional state responsibility. Likewise,

17    conflict preemption requires a "clear conflict" between state and federal law. *Id.* at 420, which

18    Defendants have not even purported to identify.

19         Even if the foreign affairs defense created a basis for removal jurisdiction—and it does

20    not—no necessary element in any of Plaintiffs' claims substantially impinges on the federal

21    government's foreign policy prerogative.

22         **C.**      **Plaintiffs' Complaints Do Not Fall Within the Jurisdictional Grant of the**

23                   **Outer Continental Shelf Lands Act.**

24         Plaintiffs' Complaints are not subject to federal jurisdiction pursuant to the Outer

25    Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1349(b)(1), even under the extremely

26    broad interpretation of the statute Defendants advocate (Not. of Rem. ¶¶ 49–55). Defendants'

27    overbroad formulation of the OCSLA jurisdictional grant would bring not only these cases into

28    federal court, but any case involving facts traceable to deep sea oil drilling, no matter how far-

SHER
EDLING LLP

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND**    33
**CASE NOS. 3:17-CV-04929-VC, 3:17-CV-04934-VC, 3:17-CV-04935-VC**

1    flung and remote—for example, a driver's state law personal injury action against a tanker truck

2    driver stemming from an accident in Tennessee would be removable simply because the tanker

3    carried gasoline refined from oil extracted from the Outer Continental Shelf ("OCS"). That is not

4    the effect or intent of the OCSLA, and § 1349 cannot be read to generate such "absurd results."

5    *Plains Gas Sols., LLC v. Tennessee Gas Pipeline Co.*, 46 F. Supp. 3d 701, 704–05 (S.D. Tex.

6    2014) (remanding case alleging unlawful assignment of natural gas processing contract and

7    unlawful closure of onshore gas pipeline valve, because activities that caused injury were not

8    physical acts conducted on the OCS).

9         Congress passed the OCSLA in 1953, with the "purpose . . . . to define a body of law

10   applicable to the seabed, the subsoil, and the fixed structures" on the OCS beyond the territorial

11   waters of any state. *Rodrigue v. Aetna Cas. & Sur. Co.*, 395 U.S. 352, 355 (1969). Accordingly,

12   the Act contains provisions governing labor disputes, workers compensation, and safety

13   regulations for deep-water platforms. *Valladolid v. Pac. Operations Offshore, LLP*, 604 F.3d

14   1126, 1133 (9th Cir. 2010), *aff'd and remanded*, 565 U.S. 207 (2012).

15        The OCSLA vests original jurisdiction in the district courts for claims concerning

16   "damage resulting from injurious physical acts" conducted on the OCS, *Par. of Plaquemines v.

17   Total Petrochem. & Ref. USA, Inc.*, 64 F. Supp. 3d 872, 895 (E.D. La. 2014), where the dispute

18   "alters the progress of production activities on the OCS and thus threatens to impair the total

19   recovery of the federally-owned minerals." *EP Operating Ltd. P'ship v. Placid Oil Co.*, 26 F.3d

20   563, 570 (5th Cir. 1994). Neither of those elements is satisfied here. Plaintiffs' injuries do not

21   arise from or relate to the physical operations that some Defendants may have conducted on the

22   OCS, but instead from the defective nature of Defendants' products, their failure to warn of those

23   defects, and their campaign of misinformation to conceal the products' known dangers. The

24   cases, moreover, do not threaten the recovery of minerals from the OCS, except in the most

25   detached sense.

26        The Ninth Circuit has not ruled on the outer limits of OCSLA jurisdiction, and

27   Defendants instead rely on cases from the Fifth Circuit. Plaintiffs do not concede that the Fifth

28   Circuit's test is the correct one, nor that the Ninth Circuit would adopt it, but Defendants'

SHER
EDLING LLP

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND
CASE NOS. 3:17-CV-04929-VC, 3:17-CV-04934-VC, 3:17-CV-04935-VC**                    34

1    arguments would fail even under a maximally broad reading of those cases. The Fifth Circuit has

2    held: "Courts typically assess jurisdiction under [§ 1349] in terms of whether (1) the activities

3    that caused the injury constituted an 'operation' 'conducted on the outer Continental Shelf' that

4    involved the exploration and production of minerals, and (2) the case 'arises out of, or in

5    connection with' the operation." *In re Deepwater Horizon*, 745 F.3d 157, 163 (5th Cir. 2014).

6    "[T]he term 'operation' contemplate[s] the doing of some physical act on the" OCS. *See EP*

7    *Operating Ltd.*, 26 F.3d at 567. And a plaintiff's case "arises out of, or in connection with" the

8    operation when (1) the plaintiff "would not have been injured 'but for'" the operation, *Recar v.*

9    *CNG Producing Co.*, 853 F.2d 367, 369 (5th Cir. 1988), and (2) granting relief "thus threatens to

10   impair the total recovery of the federally-owned minerals" from the OCS. *EP Operating Ltd.*, 26

11   F.3d 570.

12         Fifth Circuit courts have treated the OCSLA jurisdictional grant as broad, but have

13   nonetheless held that "the 'but-for' test . . . is not limitless," and must be applied in light of the

14   OSCLA's overall goals. *Plains Gas Sols.*, 46 F. Supp. 3d at 704–05. Because

15         the efficient exploitation of the minerals of the OCS, owned exclusively by the
16         United States . . . was at least a primary reason for OCSLA, . . . any dispute that
         alters the progress of production activities on the OCS threatens to impair the
17         total recovery of the federally-owned minerals from the reservoir or reservoirs
         underlying the OCS . . . was intended by Congress to be within the grant of
18         federal jurisdiction contained in § 1349.

19   *Amoco Prod. Co. v. Sea Robin Pipeline Co.*, 844 F.2d 1202, 1210 (5th Cir. 1988). Against that

20   backdrop, the

21         argument that the 'but-for' test extends jurisdiction to any claim that would not
         exist but for offshore production lends itself to absurd results; under [such a] view,
22         an employment dispute brought by an employee of an onshore processing facility
         would fall within the OCSLA because, but for the activities on the OCS, the
23         facility and the employment relationship would not exist.

24   *Plains Gas Sols.*, 46 F. Supp. 3d at 705. "The Fifth Circuit has rejected such a universal

25   application, recognizing that 'one can hypothesize a "mere connection" between the cause of

26   action and the OCS operation too remote to establish federal jurisdiction.'" *Id.* (quoting *In re*

27   *Deepwater Horizon*, 745 F.3d at 163).

28         Plaintiffs' injuries here were not caused by, do not arise from, and do not interfere with

SHER
EDLING LLP

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND
CASE NOS. 3:17-CV-04929-VC, 3:17-CV-04934-VC, 3:17-CV-04935-VC**                    35

physical "operations" on the OCS as that term is used in the OCSLA. Plaintiffs' injuries arise from the defective nature of Defendants' various fossil fuel products, Defendants' injection of those products into the marketplace without sufficient warnings of their known dangers, and from the campaign of misinformation that undermined public understanding of those dangers— no matter where or by what "operations" the products' constituent elements were originally extracted. *See generally* Compl. ¶¶ 176–264 (causes of action). Plaintiffs' Complaints indeed target fossil fuel products that cannot have been extracted from the OCS, such as coal, and do not distinguish between fossil fuels by location of extraction. *See, e.g., id.* ¶ 3 ("The primary source of this pollution is the extraction, production and consumption of coal, oil, and natural gas, referred to collectively in this Complaint as 'fossil fuel products'"); *id.* ¶¶ 22, 24, 26 (naming coal company defendants). Defendants' assertions that some defendants "participate very substantially in the federal OCS leasing program," and that a "substantial" but undefined "portion of the national consumption of fossil fuel products stems from production on federal lands" (Not. of Rem. ¶¶ 3, 54), do not mean that Plaintiffs' injuries arose from "operations" on the OCS. The injuries stem from the nature of the products themselves, and Defendants' knowledge of their dangerous effects, not from the "operations" used to extract them in raw form.[16]

---

[16] District Courts in the Fifth Circuit routinely refuse to exercise jurisdiction over cases tangentially related to mineral exploration and production on the OCS, where granting relief would have no effect on those operations: *See, e.g., Parish of Plaquemines*, 64 F. Supp. 3d at 895 (no OCSLA jurisdiction where injurious conduct occurred in state waters, even though it "involved pipelines that ultimately stretch to the OCS"); *Fairfield Indus., Inc. v. EP Energy E&P Co.*, No. CV H-12-2665, 2013 WL 12145968, at *5 (S.D. Tex. May 2, 2013), *report and recommendation adopted*, No. CV 4:12-2665, 2013 WL 12147780 (S.D. Tex. July 2, 2013) (no OCSLA jurisdiction over dispute regarding licensing agreement for pre-existing seismic data for Gulf of Mexico seabed, where "performance of the disputed contracts would not influence activity on the OCS, nor require either party to perform physical acts on the OCS"); *LLOG Expl. Co. v. Certain Underwriters at Lloyd's of London*, No. CIVA 06-11248, 2007 WL 854307, at *5 (E.D. La. Mar. 16, 2007) (no OCSLA jurisdiction over insurance dispute "regarding damages to production facilities that have already occurred" because suit "does not affect or alter the progress of production activities on the OCS, nor does it threaten to impair the total recovery of federally owned minerals from the OCS"); *Brooklyn Union Expl. Co. v. Tejas Power Corp.*, 930 F. Supp. 289, 292 (S.D. Tex. 1996) ("A controversy exclusively over the price of gas which has

SHER
EDLING LLP

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND
CASE NOS. 3:17-CV-04929-VC, 3:17-CV-04934-VC, 3:17-CV-04935-VC**                36

1    Defendants' cases upholding jurisdiction under the OCSLA do not hold otherwise. In all

2    of them, the injuries complained of were actually caused by physical activity actually occurring

3    on the OCS related to oil and natural gas extraction, or were contract disputes directly

4    concerning those activities. In *Deepwater Horizon*, for example, the Fifth Circuit upheld OCSLA

5    jurisdiction for the plaintiffs' claims for injury to wildlife and aquatic life that happened as a

6    direct result of the massive oil spill caused by the explosion of an offshore drilling rig. *In re

7    Deepwater Horizon*, 745 F.3d at 162–64; *see also United Offshore Co. v. S. Deepwater Pipeline

8    Co.*, 899 F.2d 405, 406 (5th Cir. 1990) (contract dispute concerning natural gas pipeline running

9    from OCS to Louisiana coast); *Amoco Production Co.*, 844 F.2d at 1203 (dispute concerning

10   "take-or-pay obligations in contracts for the sale/purchase of natural gas" from natural gas

11   platform); *Laredo Offshore Constructors, Inc. v. Hunt Oil Co.*, 754 F.2d 1223, 1225 (5th Cir.

12   1985) (dispute over contract for transportation and installation of offshore oil and gas platform).

13   The OCSLA does not provide a basis for jurisdiction over these cases in this Court.

14       **D.    There Is No Enclave Jurisdiction Because Plaintiffs' Claims Do Not "Arise"
15              Within the Federal Enclave.**

16   Defendants' assertion that Plaintiffs' claims arose within federal enclave(s) and therefore

17   present a federal question lacks merit for at least three reasons. First, contrary to Defendants'

18   arguments, the Complaints seek to "abate the nuisance caused by sea level rise in the [Plaintiffs']

19   jurisdiction[s]," Compl. ¶ 12, and expressly exclude damages to federal property from the

20   claimed injuries. The shoreline vulnerability assessments that each Complaint incorporates by

21   reference repeatedly state that federal lands are excluded from the area of study.[17] Second,

22

23
───────────────────────────────
24   already been produced, as in the instant case, simply does not implicate the interest expressed by
     Congress in the efficient exploitation of natural resources on the OCS."); *see also St. Joe Co. v.*
25   *Transocean Offshore Deepwater Drilling Inc.*, 774 F. Supp. 2d 596, 609 (D. Del. 2011) (granting
     motion to remand Florida law claims and observing that, "[w]hile the federal government has
26   sovereignty on the Outer Continental Shelf, states still have the power to adjudicate claims
     arising from activities there; i.e., states have concurrent jurisdiction").

27   [17] *See, e.g.,* Marin Compl. ¶ 13(d) n.12, County of Marin, Marin Bay Waterfront Adaptation and
     Vulnerability Evaluation (BayWAVE), (June 20, 2017) at 133, *available at*
28

SHER
EDLING LLP

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND**        37
**CASE NOS. 3:17-CV-04929-VC, 3:17-CV-04934-VC, 3:17-CV-04935-VC**

Defendants' assertions "on information and belief" that some of their alleged bad acts occurred on federal land are not supported by the Complaints. Finally, and most importantly, even if some portion of Defendants' tortious conduct did occur on federal land, that does not determine where Plaintiffs' claims "arose." As a matter of common sense and California substantive law, each of Plaintiffs' claims "arose" only once all the elements of the tort were complete, which, here, was only when and where that Plaintiff suffered injury, which is an element of each claim.

"Federal courts have federal question jurisdiction over tort claims that *arise on* 'federal enclaves.'" *Durham*, 445 F.3d at 1250 (emphasis added). That is so because the Constitution's "Enclave Clause" grants Congress the power

> To exercise exclusive legislation in all cases whatsoever, over . . . the seat of the government of the United States, and . . . over all places purchased by the consent of the legislature of the State in which the same shall be, for the erection of forts, magazines, arsenals, dock-yards and other needful buildings.

Const. Art. I, Sec. 8, cl. 18. "Exclusive legislation" has the same meaning as "exclusive jurisdiction," because it "assumes the absence of any interference with the exercise of the functions of the Federal Government" and "debar the State from exercising any legislative authority including its . . . police power" within the federal enclave. *Silas Mason Co. v. Tax Comm'n of State of Washington*, 302 U.S. 186, 197 (1937).

### 1. Plaintiffs' Injuries Occurred and Will Occur Exclusively on Non-Federal Lands.

Defendants allege "on information and belief" that some indefinite portion of Plaintiffs' injuries and some indefinite portion of Defendants' tortious conduct occurred on federal land. Neither assertion is correct.

First, Plaintiffs do not complain that any of their injuries arose on federal land, and Defendants' citations to Plaintiffs' sea level rise vulnerability assessments grossly misconstrue their contents. Plaintiffs' Complaints allege numerous harms they have sustained and will sustain

---

http://www.marincounty.org/main/baywave/vulnerability-assessment (noting that federal park lands within the county were "outside the study area for this report").

SHER
EDLING LLP

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND**
**CASE NOS. 3:17-CV-04929-VC, 3:17-CV-04934-VC, 3:17-CV-04935-VC**

38

1    as a result of rising seas. *See generally* Marin Compl. ¶¶ 162–79; San Mateo Compl. ¶¶ 162–78;

2    Imperial Beach Compl. ¶¶ 162–75. Defendants assert "[u]pon information and believe" that each

3    Plaintiff's injuries "expressly includ[e] damage to federal lands." Not. of Rem. ¶ 67. Exactly the

4    opposite is the case—the city and county reports incorporated by reference in the Complaints[18]

5    expressly *exclude* federal property within and abutting Plaintiffs' boundaries from their analysis.

6        Each report cited in Plaintiffs' Complaints contains the same admonitions. The Executive

7    Summary of Plaintiff Marin's BayWAVE study states: "Note that while in Marin County, the

8    Marin Headlands and Fort Baker are Federal property and *not the focus of this assessment*."

9    BayWAVE at 4 (emphasis added).[19] Plaintiff Marin County's CSMART report similarly states

10   that areas under federal jurisdiction are "not the focus of this assessment." CSMART at 13.[20]

11

12

13   [18] Plaintiff Marin County incorporates by reference two shoreline vulnerability studies: (1) a Bay
     shoreline study conducted by the Marin County Department of Public Works titled "BayWAVE.
14   County of Marin, Marin Bay Waterfront Adaptation and Vulnerability Evaluation (BayWAVE),
     (June 20, 2017), http://www.marincounty.org/main/baywave/vulnerability-assessment (cited at,
15   e.g. Marin Compl. ¶ 13(d)), and (2) a Pacific Coast shoreline study conducted by the Marin
     Community Development agency titled "C-SMART," County of Marin, Marin Ocean Coast Sea
16   Level Rise Vulnerability Report (CSMART), (September 2015) (cited at, e.g., Marin Compl.
     ¶ 13(d)). Plaintiff Imperial Beach incorporates a "Sea Level Rise Assessment" conducted on its
17   behalf in 2016, Revell Coastal, 2016 City of Imperial Beach Sea Level Rise Assessment
     (September 2016), http://www.imperialbeachca.gov/vertical/sites/%7B6283CA4C-E2BD-4DFA-
18   A7F7-8D4ECD543E0F%7D/uploads/100516_IB_Sea_Level_Rise_Assessment_FINAL.pdf
     (cited at, e.g., Imperial Beach Compl. ¶ 13(a)). Plaintiff San Mateo incorporates a draft "Sea
19   Level Rise Vulnerability Assessment" it conducted in conjunction with other entities, County of
     San Mateo, Sea Level Rise Vulnerability Assessment, Public Draft (April 2017),
20   http://seachangesmc.com/current-efforts/vulnerability-assessment/ (cited at, e.g., San Mateo
     Compl. ¶ 13(b)).
21
     [19] The BayWAVE report repeats its exclusion of federal lands throughout. *See, e.g.*, *supra* n.17
22   at 117 (providing list of marine mammal habitats that expressly "does not include federal park
     locations"); *id.* at 133 (noting that National Park land in or near Marin County is "outside the
23   study area of this report").

24   [20] The C-SMART report, like the BayWAVE report, repeats multiple times that federal lands are
     excluded from its scope. *See, e.g.*, *id.* at 102 (providing lists of marine bird and mammal habitats
25   that expressly "does not include Federal Park locations"); *id.* at 117 ("While outside of the study
     area for this report, these federal park lands draw tourists and residents to Marin's Coast."); *id.* at
26   136 ("[A] total of 20 vulnerable [archaeological] sites fall within the purview of this assessment
     (non-federal land)."); *id.* at 137 ("Several [historic] sites lie on federal land, and therefore not
27   within the purview of this assessment."); *id.* at 158 ("The portion of Stinson Beach that falls

28

SHER
EDLING LLP

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND**
**CASE NOS. 3:17-CV-04929-VC, 3:17-CV-04934-VC, 3:17-CV-04935-VC**                    39

Plaintiff Imperial Beach's Sea Level Assessment also expressly excludes federal property from its scope.[21] Finally, while San Mateo's vulnerability assessment does describe vulnerability to some regional assets owned by the federal government, it expressly acknowledges that those assets are "completely controlled by a separate organization," and that it has no authority to directly regulate them. *See San Mateo Sea Level Rise Vulnerability Assessment at 75.* By their own terms, the public assessments of Plaintiffs' injuries do not include damage to federal land.

The recent decision in *Washington v. Monsanto Co.*, No. C17-53RSL, 2017 WL 3492132 (W.D. Wash. July 28, 2017), is instructive. There, Washington brought state law tort claims against Monsanto Company in state court, alleging that Monsanto "contaminat[ed] water, land, and wildlife throughout the state's territory with toxic chemicals called polychlorinated biphenyls ('PCBs')" during the forty-year period when Monsanto was the sole manufacturer of PCBs sold in the United States. *Id.* at *1. Monsanto removed, arguing in relevant part that some of the allegedly contaminated waters described in the complaint "are 'at or near' federal territories, including military bases." *Id.* at *5. The State moved to remand, "assert[ing] that it d[id] not seek damages for contamination to waters and land within federal territory, as it would not have standing to do so." *Id.* Based on that representation the court was "satisfied that, because Washington avowedly does not seek relief for contamination of federal territories, none of its claims arise on federal enclaves," and granted the motion to remand. *Id.* Likewise here, the Complaints, and the studies incorporated by reference therein, allege that Plaintiffs' injuries arise on non-federal land only. *See also Bd. of Comm'rs of the Se. Louisiana Flood Prot. Auth.-E. v. Tennessee Gas Pipeline Co.*, 29 F. Supp. 3d 808, 831 (E.D. La. 2014) (rejecting enclave jurisdiction where plaintiff stipulated it would not seek damages for wetland loss in federal

within the Golden Gate National Recreation Area is federal land outside of the County (and C-SMART) jurisdiction.").

[21] Imperial Beach Sea Level Rise Assessment at 1-1 (noting for example that the City is "bordered by . . . the Tijuana River National Estuarine Research Reserve (TRNERR, and the Naval Outlying Landing Field to the south . . . ."); *id.* at 7-2 ("Under existing conditions, only one of the hazardous material locations is within City's regulatory authority and the other is associated with the Naval Outlying Landing Field.").

SHER EDLING LLP

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND CASE NOS. 3:17-CV-04929-VC, 3:17-CV-04934-VC, 3:17-CV-04935-VC**

40

wildlife reserve). There is therefore no basis to assert federal enclave jurisdiction based on the location of Plaintiffs' injuries. Defendants' reliance on *Humble Pipe Line Co. v. Waggonner*, 376 U.S. 369, 370 (1964), and *Mississippi River Fuel Corp. v. Cocreham*, 390 F.2d 34, 35 (5th Cir. 1968), (Not. of Rem. ¶ 68), is misplaced. Both cases held that a state may not exercise its taxing power over oil and gas drilling and pipeline operations located entirely within the federal enclave. Neither analyzed where a state law tort cause of action arises for enclave jurisdiction purposes—let alone whether injuries caused by fossil fuel products on exclusively non-federal land could be subject to enclave jurisdiction, as Defendants seem to imply. Neither case can read for that proposition.

Second, Defendants argue that "[o]n information and belief, Defendants maintain or maintained oil and gas operations on military bases or other federal enclaves," and that "the Complaint[s] rel[y] upon conduct occurring in the District of Columbia." Not. of Rem. ¶¶ 68, 69. However, neither assertion is supported by the allegations in these Complaints. Defendants state that some portion of some Defendants' fossil fuel extraction has occurred on federal land, but cite no allegation in the Complaints referring to those lands or to conduct occurring there. Defendants also refer to a set of talking points prepared for a U.S. Undersecretary of State (described at Compl. ¶ 129) and a series of fraudulent letters prepared by fossil fuel industry lobbyists (described at Compl. ¶ 134). Neither paragraph alleges tortious conduct occurring in the District of Columbia but instead provide evidence of Defendants' knowledge of the defective nature of their fossil fuel products. The talking points (Compl. ¶ 129) prepared for a U.S. Undersecretary of State in advance of a meeting with fossil fuel industry representatives and the forged letters (Compl. ¶ 134) prepared by a firm subcontracted by fossil fuel lobbyists to oppose the 2009 Clean Energy and Security Act are relevant because they show that, despite Defendants' extensive understanding of the defective nature of fossil fuel products, Defendants did not disclose or warn of those defects, and instead opposed efforts to mitigate those defects.

The few cases Defendants cite to support their District of Columbia argument have nothing to do with removal jurisdiction, and do not even discuss the Enclave Clause as a basis for the court's jurisdiction. The court in *Jacobsen v. U.S. Postal Service*, 993 F.2d 649, 652 (9th

SHER
EDLING LLP

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND
CASE NOS. 3:17-CV-04929-VC, 3:17-CV-04934-VC, 3:17-CV-04935-VC**

41

Cir. 1992), considered whether "ingress-egress walkways" at federal post offices are public fora under the First Amendment. The opinion does not consider any jurisdictional issue, and does not mention the Enclave Clause. *Id.* The case of *Collier v. District of Columbia*, 46 F. Supp. 3d 6, 20 n.8 (D.D.C. 2014), was an excessive force action against a District of Columbia police officer, in which the court observed in dicta that "[b]ecause the District of Columbia is a federal enclave, it is subject to the Fifth Amendment, and not the Fourteenth, which applies to the States." The court did not discuss or cite the Enclave Clause, and jurisdiction existed because the plaintiff expressly brought claims under the Constitution and 42 U.S.C. § 1983. *Id.* at 14. Finally, *Hobson v. Hansen*, 265 F. Supp. 902, 906 (D.D.C 1967), held in relevant part that a statute vesting power to appoint members of the District of Columbia Board of Education in judges of the D.C. District Court was constitutional under the Enclave Clause. The case, once again, says nothing about the district court's jurisdiction over tort claims, let alone removal jurisdiction.

### 2. Each of Plaintiffs' Claims Arose Only Once a Complete Tort Existed Upon Which Plaintiffs Could Sue, Which in This Case Occurred When and Where Plaintiffs Suffered Injury—on Non-Federal Lands.

Even if Defendants' Notice of Removal accurately described the contents of the Complaints, federal enclave jurisdiction would still not be proper because Plaintiffs' claims "arose" only at the time and place where all the elements of Plaintiffs' claims were complete, forming an actionable tort. The elements of Plaintiffs' claims are defined by substantive California law, and each claim includes an injury element. Because the injuries complained of occurred and will occur only on real property within Plaintiffs' respective jurisdictions, all Plaintiffs' claims "arose" within their boundaries, and none "arose" within the federal enclave.

A tort cause of action "arises," for enclave purposes, when and where the underlying tort is complete. *Totah v. Bies*, No. C 10-05956 CW, 2011 WL 1324471, at *1 (N.D. Cal. Apr. 6, 2011). In *Totah*, the plaintiff brought a defamation action stemming from her dismissal from Lucasfilm Ltd., whose headquarters is located in San Francisco "on the Presidio, a federal enclave." The defendant removed, and the plaintiff moved for remand arguing that her defamation claim did not arise at the Lucasfilm headquarters. *Id.* Judge Wilken observed that "[i]n a defamation action, the place of publication—*the last event necessary to render the*

SHER EDLING LLP

*tortfeasor liable*—is, for venue purposes, the place of the wrong," and that it was "self-evident that the substance and consummation of the tort occurs when and where the third person receives, reads, and comprehends the libelous matter." *Id.* at *2 (citation omitted). The plaintiff had not alleged where any defamatory statements were published, but did allege that she was defamed to the President of Lucasfilm, who testified in turn that the allegedly libelous statements "were relayed to him by telephone, and he heard these comments while he was working at Lucasfilm, located on the Presidio." *Id.* Because the only publication evidence showed that the allegedly defamatory statements were heard on the Presidio, Judge Wilken found that the defamation claim arose there and that the court had jurisdiction. *Id.*; *see also In re High-Tech Employee Antitrust Litig.*, 856 F. Supp. 2d 1103, 1125 (N.D. Cal. 2012) (Koh, J.) (rejecting argument that "federal enclave doctrine applies as long as some of the alleged events occurred on the federal enclave," and instead finding that because "all three elements of [the plaintiff's] [California law antitrust] claim arose outside the Presidio," plaintiff's state law claim arose outside the federal enclave).[22]

      Here, all Plaintiffs' claims have an injury element, and therefore those claims arose only when and where Plaintiffs suffered injury. Stated differently, Plaintiffs could not have brought

---

[22] The cases Defendants cite that consider the issue in detail perform the same analysis as in *Totah*, looking to where all elements forming the cause of action were complete to determine where the claim arose. *See Sparling v. Doyle*, No. EP-13-CV-00323-DCG, 2014 WL 2448926, at *3 (W.D. Tex. May 30, 2014) (observing that the "key factor" for finding enclave jurisdiction is "the location of the plaintiff's injury or where *the specific cause of action* arose," and finding jurisdiction where all parties agreed all relevant conduct and injuries occurred at Fort Bliss (emphasis added)); *Bd. of Comm'rs of the Se. Louisiana Flood Prot. Auth.-E. v. Tennessee Gas Pipeline Co.*, 29 F. Supp. 3d 808, 831 (E.D. La. 2014) (rejecting jurisdiction where defendant could not show either "Defendants' conduct took place on a federal enclave or the damage complained of—coastal erosion—occurred on a federal enclave"). The remainder of Defendants' cases, inapplicable here, hold that where a personal injury action arises from a discrete occurrence at a military facility, enclave jurisdiction is proper. *Bell v. Arvin Meritor, Inc.*, No. 12-00131-SC, 2012 WL 1110001, at *2 (N.D. Cal. Apr. 2, 2012) (personal injury action based on discrete incidents of asbestos exposure at military bases was subject to enclave jurisdiction); *Fung v. Abex Corp.*, 816 F. Supp. 569, 571 (N.D. Cal. 1992) (finding jurisdiction over asbestos personal injury action where all alleged injurious exposures occurred on naval bases during employment by naval contractor).

SHER
EDLING LLP

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND
CASE NOS. 3:17-CV-04929-VC, 3:17-CV-04934-VC, 3:17-CV-04935-VC**                43

suit before the injuries occurred, because the causes of action had not arisen. California law bears that reasoning out: "Civil actions, without exception, can only be commenced . . . after the cause of action shall have accrued." Cal. Civ. Proc. Code § 312. In turn, "[g]enerally speaking, a cause of action accrues at 'the time when the cause of action is complete with all of its elements.'" *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 806 (2005) (quoting *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397 (1999)). Plaintiffs' First, Second, and Fifth causes of action are for public and private nuisance, Compl. ¶¶ 180–203, 229–39, and "[a]n essential element of a cause of action for nuisance is *damage or injury*." *Helix Land Co. v. City of San Diego*, 82 Cal. App. 3d 932, 950 (1978) (emphasis added). Plaintiffs' Third, Fourth, Sixth, and Seventh causes of action are product liability claims for failure to warn and design defect, alleging strict liability and negligence theories. Compl. ¶¶ 204–28. "A plaintiff may seek recovery in a 'products liability' case either on a theory of strict liability or on a theory of negligence," but "[u]nder either theory, the plaintiff must prove that a defect in the product *caused injury*." *Sherman v. Hennessy Indus., Inc.*, 237 Cal. App. 4th 1133, 1139 (2015), *as modified on denial of reh'g* (July 8, 2015), review denied (Sept. 30, 2015). Finally, Plaintiffs' Eighth Cause of Action is for trespass, which "arises" when an unlawful entry onto land occurs, interfering with the possessory interest of the person in rightful possession. *See, e.g.*, *Starrh & Starrh Cotton Growers v. Aera Energy LLC*, 153 Cal. App. 4th 583, 592 (2007) (permanent trespass claim "accrues . . . at the time of entry," while "[c]ontinuing trespasses are essentially a series of successive injuries" that accrues "anew with each injury"). Under the same analysis performed in *Totah*, for Plaintiffs' California law claims the "consummation of the tort occur[ed] when and where" Plaintiffs suffered injury. *See Totah*, 2011 WL 1324471, at *2. But unlike *Totah*, Plaintiffs' alleged injuries here occurred entirely outside the federal enclave, and federal enclave jurisdiction is therefore improper.

### E.   Plaintiffs' Claims Are Not Removable Under 28 U.S.C. § 1442(a)(1) Because Defendants Are Not "Acting Under Federal Officers."

Defendants argue (Not. of Rem. ¶¶ 56–64) that they are entitled to remove Plaintiffs' claims to federal court pursuant to 28 U.S.C. § 1442(a)(1), which permits removal of a suit by "any officer (or any person acting under that officer) of the United States or any agency thereof,

SHER EDLING LLP

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND
CASE NOS. 3:17-CV-04929-VC, 3:17-CV-04934-VC, 3:17-CV-04935-VC        44

in an official or individual capacity, for or relating to any act under color of such office."
Defendants contend that, because some of them have participated in economic agreements with
federal entities related to the extraction and sale of fossil fuels over the last century, those
defendants were acting under federal officers within the meaning of Section 1442(a)(1).
Accepting Defendants' arguments would expand the scope of Section 1442(a)(1) far beyond
Congress's intent, potentially encompassing any corporation that does any portion of its business
with the federal government, leases land from the federal government, or sells even a small
fraction of its product to a federal entity. Defendants' contentions find no support in Section
1442(a)(1) and should be rejected.

To remove under the federal officer removal statute, a defendant bears the burden of
proving that "(a) it is a 'person' within the meaning of the statute; (b) there is a causal nexus
between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c)
it can assert a 'colorable federal defense.'" *Goncalves v. Rady Children's Hosp. San Diego*, 865
F.3d 1237, 1244 (9th Cir. 2017). The removing party "may not offer mere legal conclusions," but
"must allege the underlying facts supporting each of the requirements for removal jurisdiction."
*Leite v. Crane Co.*, 749 F.3d 1117, 1122 (9th Cir. 2014). "Because federal officer removal is
rooted in 'an anachronistic mistrust of state courts' ability to protect and enforce federal interests
and immunities,'" § 1442 must be "read narrowly" when applied to private parties. *See Mobley v.
Cerro Flow Prod., Inc.*, No. CIV 09-697-GPM, 2010 WL 55906, at *3 (S.D. Ill. Jan. 5, 2010)
(quoting *Freiberg v. Swinerton & Walberg Prop. Servs., Inc.*, 245 F. Supp. 2d 1144, 1150, 1152
n.6 (D. Colo. 2002)). "[P]rivate actors seeking to benefit from [§ 1442] bear a special burden of
establishing the official nature of their activities." *Freiberg*, 245 F. Supp. 2d at 1150.

Although Defendants are "persons" under Section 1442(a)(1), they cannot take advantage
of that removal authority because they have not established that any of the conduct creating
liability under Plaintiffs' claims were actions they took "pursuant to a federal officer's
directions." *Goncalves*, 865 F.3d at 1244 (internal quotation marks omitted).

SHER
EDLING LLP

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND
CASE NOS. 3:17-CV-04929-VC, 3:17-CV-04934-VC, 3:17-CV-04935-VC**                45

1

### 1.   Defendants Have Not Shown They "Acted Under" Federal Officers.

2      Although Defendants do not purport to *be* federal officers, they contend that a subset of

3  them were "acting under" federal officers when they extracted and sold fossil fuels pursuant to

4  occasional contracts with the federal government. Not. of Rem. ¶¶ 56–63. To prove that it was

5  acting under a federal officer within the meaning of Section 1442(a)(1), however, a defendant

6  must establish both that it was "involve[d in] an effort to *assist*, or to help *carry out*, the duties or

7  tasks of [a] federal superior" and that its relationship with the federal superior "involve[d]

8  'subjection, guidance, or control.' " *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142,

9  151–52 (2007). In *Watson*, plaintiffs sued Philip Morris in state court for unfair business

10 practices and deceptive conduct related to manipulating cigarette tests to obtain a lower tar and

11 nicotine result that could be used to market the cigarettes as "light." *Id.* at 146. The Supreme

12 Court rejected the tobacco company's gambit for removal based on federal officer jurisdiction,

13 holding that even in a heavily regulated industry, a private company does not "act[] under" an

14 officer of the United States unless it is "lawfully assist[ing]" the federal officer "in the

15 performance of his official duty." *Id.* at 151. Likewise here, Plaintiffs assert claims for harms

16 from the defective nature of Defendants' fossil fuel products, Defendants' failure to warn about

17 the known risks of those products, and Defendants' affirmative campaign of misinformation to

18 conceal those risks. None of Defendants' "acting under" theories even attempts to demonstrate

19 that the tortious conduct Plaintiffs challenge was taken under the guidance or control of any

20 federal officer. Defendants therefore cannot remove their claims pursuant to Section

21 1442(a)(1).[23]

22

23

24  ───────────────

    [23] Defendants also fail to establish that they were helping a government official perform a
25  government function—*i.e.*, that they were "involve[d in] an effort to *assist*, or to help *carry out*,
    the duties or tasks of [a] federal superior"—as required to establish that they were acting under a
26  federal officer. *Watson*, 551 U.S. at 152. Defendants rely exclusively on their commercial
    relationship with federal entities arising out of leasing land or selling an off-the-shelf commodity
27  to the government. But Defendants identify no case in which such a garden-variety commercial
    relationship gave rise to acting-under removal jurisdiction.
28

SHER
EDLING LLP

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND**      46
**CASE NOS. 3:17-CV-04929-VC, 3:17-CV-04934-VC, 3:17-CV-04935-VC**

1    Defendants first contend that "the Chevron Parties and other Defendants have long

2    explored for and produced minerals, oil and gas on federal lands pursuant to leases governed by

3    the Outer Continental Shelf Lands Act." Not. of Rem. ¶ 59. Those leases, Defendants assert,

4    "required" Defendants "to conduct exploration, development and production activities" and

5    "obligate[d] lessees like Defendants" to "carr[y] out exploration, development and production

6    activities approved by Interior Department officials" while complying "with all applicable

7    regulations, orders, written instructions, and the terms and conditions set forth in" the leases and

8    in project-specific development, production, and exploration plans. *Id.* ¶¶ 59–60. In support of

9    their arguments, Defendants rely on two leases, which are presumably representative. Not. of

10   Rem. ¶ 59 & Exhs. B, C. Nothing in those leases supports Defendants' contention that the

11   extraction and exploration activities they undertook pursuant to such leases was under the

12   guidance or control of a federal officer.

13   First, when a corporation makes an uncoerced decision to enter into a lease agreement

14   with the federal government for the purpose of finding and extracting fossil fuels, it makes a

15   choice that is free from the "subjection, guidance, or control," of the federal government.

16   *Watson*, 551 U.S. at 152. Defendants do not cite any case where a voluntary choice by a private

17   party to lease property or mineral rights from the federal government automatically transformed

18   later activity based on the lease agreement into activity under the control of a federal officer.

19   Second, Defendants miss the mark in arguing that they were acting under federal officers

20   because the leases in question required Defendants to comply "with all applicable regulations,

21   orders, written instructions, and the terms and conditions set forth in" the leases and associated

22   plans. *See* Not. of Rem. ¶ 60. The Supreme Court has held unambiguously that "the help or

23   assistance necessary to bring a private party within the scope of the statute does *not* include

24   simply *complying* with the law." *Watson*, 551 U.S. at 152. That holding is not limited to

25   compliance with general statutory law applicable to the general population. Rather, the Court

26   specifically held that "a highly regulated firm cannot find a statutory basis for removal in the fact

27   of federal regulation alone. . . . And that is so even if the regulation is highly detailed and even if

28   the private firm's activities are highly supervised and monitored." *Id.* at 153; *see also id.* at 152

SHER
EDLING LLP

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND        47
CASE NOS. 3:17-CV-04929-VC, 3:17-CV-04934-VC, 3:17-CV-04935-VC

1   ("When a company subject to a regulatory order (even a highly complex order) complies with

2   the order, it does not ordinarily create a significant risk of state-court 'prejudice.'").[24] Something

3   more than simply following federal rules or guidelines is required to establish the requisite

4   acting-under relationship, and Defendants have not satisfied that requirement.

5          Third, the contractual obligations included in the leases do not include the type of

6   detailed direction that could demonstrate the "subjugation, guidance, or control," required to

7   establish that Defendants were acting under a federal officer. *See Watson*, 551 U.S. at 152.

8   Although Defendants allege that the leases imposed extensive government control over the

9   process of extracting fossil fuels, an inspection of the leases shows that is not so. The leases did

10  not require Defendants to extract fossil fuels in a particular manner, did not dictate the

11  composition of oil or gas that would later be refined and sold, and did not purport to affect the

12  content or methods of Defendants' communications with consumers about Defendants' products.

13  In other words, nothing in the leases even arguably directed or controlled any of the actions that

14  could form a basis for liability under Plaintiffs' claims.

15         Defendants err in seeking refuge in the Ninth Circuit's decision in *Leite v. Crane Co.*,

16  749 F.3d 1117 (9th Cir. 2014), *cert. denied*, 135 S. Ct. 361 (2014). *See* Not. of Rem. ¶ 58. In

17  *Leite*, machinists at a naval shipyard alleged injury from asbestos-containing products

18  manufactured by the defendants. *Id.* at 1119–20. The Ninth Circuit held that removal of the

19  failure-to-warn claims pursuant to Section 1442(a)(1) was proper because the defendants were

20  acting under a federal officer for purposes of those claims. *See id.* at 1119–20, 1123–24. But the

21  leases on which Defendants rely do not materially resemble the onerous restrictions that

22  governed the *Leite* defendants' conduct. In *Leite*, the defendants proffered credible evidence (1)

23  that the Navy "was directly involved in preparing the manuals, which included safety

24

---

25  [24] *See also, e.g., Faulk v. Owens-Corning Fiberglass Corp.*, 48 F. Supp. 2d 653, 663 n. 14 (E.D.

26  Tex. 1999) (rejecting federal officer removal and stating that "Defendants can bury this Court in
    federal government regulations controlling their actions. But if there is no causal nexus between

27  Defendants' actions in response to this control and the Plaintiffs' claims, then the government
    did not "make them do it" since the "it" was never under government control.").

28

SHER
EDLING LLP

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND
CASE NOS. 3:17-CV-04929-VC, 3:17-CV-04934-VC, 3:17-CV-04935-VC**                                48

1    information about equipment operation only to the extent directed by the Navy," (2) that

2    "equipment manufacturers could not include warnings beyond those specifically required and

3    approved by the Navy," and (3) "that the Navy's specifications did not require equipment

4    manufacturers to include warnings about asbestos hazards." *Id.* at 1123. Thus, the *Leite*

5    defendants established that federal officers and policies *prevented* them from including a

6    warning on the product to which the plaintiffs were exposed. "In contrast to the persuasive

7    showing by the Defendant in *Leite*, [Defendants have] failed to provide any evidence of federal

8    control or supervision over the" activities that form the basis for liability under Plaintiffs' claims.

9    *Cabalce v. Thomas E. Blanchard & Assocs., Inc.*, 797 F.3d 720, 730 (9th Cir. 2015).

10            Defendants' evidentiary showing does not even resemble the facts in any case finding

11    that the government's detailed control over the production or packaging of a product gave rise to

12    removal authority for acting under a federal officer. Defendants have not shown that the OCS

13    leases directed the manner of extraction; directed the subsequent composition of the resulting

14    product; or directed the manner in which Defendants communicated with consumers, regulators,

15    and the public about that product.[25] As already discussed, Defendants' claim that the leases

16    require them to extract or sell a certain amount of oil or gas is a consequence of their voluntary

17    decision to seek out leases with the government, not any government compulsion or direction

18    sufficient to invoke federal officer removal. Defendants have failed to establish that the leases

19    attached as Exhibits B and C to the Notice of Removal created the type of "acting under"

20    relationship that would give rise to removal jurisdiction under Section 1442(a)(1).

21

22

_____

23    [25] *Compare Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 399–400 (5th Cir. 1998)
      (manufacturers of Agent Orange were acting under a federal officer for purposes of tort claims
24    related to product composition and lack of warning where the federal government imposed
      "detailed specifications concerning the make-up, packaging, and delivery of Agent Orange" and
25    refused to allow a warning on the product), *with In re MTBE*, 488 F.3d at 131 (refusing federal
      officer removal because "while federal regulations . . . have much to say about gasoline content,
26    they allow refiners to use any of several additives to meet federal . . . requirements and say
      nothing regarding the marketing of gasoline containing MTBE, a highly dangerous compound
27    that, like tar and nicotine, poses a threat to human health").

28

SHER
EDLING LLP

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND**          49
**CASE NOS. 3:17-CV-04929-VC, 3:17-CV-04934-VC, 3:17-CV-04935-VC**

1    Defendants next rely on a 1944 contract between Standard Oil (a Chevron predecessor)

2    and the U.S. Navy governing the "joint operation and development of oil and gas deposits" in the

3    Elk Hills Reserve, a strategic petroleum reserve maintained by the Navy and that comprised a

4    common underground pool spanning property owned by the Navy and property owned by

5    Standard Oil. Not. of Rem. ¶ 61; *see also United States v. Standard Oil Co. of California*, 545

6    F.2d 624 (9th Cir. 1976); *Chevron U.S.A., Inc. v. United States*, 110 Fed. Cl. 747 (2013). With a

7    goal of maintaining a minimum level of fossil fuels in the shared underground pool, the contract

8    on which Defendants rely limited the amount Standard Oil was permitted to extract from the

9    reserve. Not. of Rem. ¶ 61, Exh. D at 5. But nothing in that contract directed Standard Oil to

10   produce a particular product for government use, to extract oil in a particular manner, or to

11   communicate with the public about its product in a particular way. Indeed, Standard Oil could

12   have complied with the contract by extracting, producing, and selling *no oil at all*. It is far-

13   fetched for Defendants to claim now that their decisions about extraction under that contract—

14   and their decisions about what to do with the oil they extracted—were somehow compelled by

15   the contract. Nothing in it provides even a whiff of "subjection, guidance, or control" needed to

16   establish that Defendants were acting under a federal officer. *See Watson*, 551 U.S. at 152. That

17   1944 contract therefore provides no basis for removal.

18   Finally, Defendants rely on certain commercial contracts under which at least one

19   Defendant agreed to supply fuel to the Navy Exchange Service Command (NEXCOM), which in

20   turn served as a retailer reselling the fuel at a discount to active duty military, retirees, reservists,

21   and their families. Again: a company's voluntary decision to sell a commodity to the government

22   does not render it a federal officer in cases alleging the product was defective or that defendants'

23   behavior was otherwise tortious. To hold otherwise would radically expand the "acting under"

24   jurisdiction in a manner unmoored from the text, history, and purposes of Section 1442(a)(1).

25   Although the Supreme Court recognized in *Watson* that "[t]he words 'acting under' are broad," it

26   simultaneously recognized that such "broad language is not limitless." 551 U.S. at 147. Under

27   Defendants' logic, any manufacturer of any product would be entitled to remove any state law

28   product liability claim against it if the manufacturer sold one of its products to a government

SHER
EDLING LLP

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND
CASE NOS. 3:17-CV-04929-VC, 3:17-CV-04934-VC, 3:17-CV-04935-VC**                    50

entity at some point in time. Such an expansive view of Section 1442(a)(1) would ignore its historical purpose of preventing state court interference with or prejudice against federal operations. *Id.* at 150, 152. Defendants' approach also makes no sense; when a corporation merely sells its product to an arm of the federal government, it does not give the government control over the nature and composition of the product, nor does it magically transform its own decisions about whether or not to share truthful information about the product with the public into government-directed decisions. Because that is what Defendants' claims boil down to, their request for removal pursuant to Section 1442(a)(1) must be rejected.

To the extent Defendants suggest that the NEXCOM contract was something more than a mere commodity-purchase arrangement, they fail to explain or substantiate that claim. Defendants have not proffered an example of such a contract, instead relying on a bare allegation that their agreements with NEXCOM "contained detailed fuel specifications." Not. of Rem. ¶ 62. That is insufficient to carry Defendants' burden of establishing removal jurisdiction. Defendants fail to establish or even allege that the "detailed fuel specifications" caused Defendants to produce, sell, or communicate in a particular way about the fuel they sold to the government in a manner that could have given rise to Plaintiffs' injuries. Defendants do not contend, for example, that the fuel they sold pursuant to that contract differed in any respect from the fuel they sold at roadside service stations generally, and had sold before becoming a party to the contract.

### 2.   No Causal Nexus Exists Between Defendants' Actions Challenged in These Cases and the Directions of Any Federal Officer.

Federal officer jurisdiction also requires that the defendant establish a "causal nexus" between the acts it performed under the government's direction and the plaintiff's claims. *Goncalves*, 865 F.3d at 1244. Because there was no delegation of authority from federal agencies to Defendants, nor direct control by those agencies over Defendant's challenged conduct, a causal nexus is necessarily absent. Moreover, regardless of the degree of federal control, the causal connection is still insufficient because Plaintiffs' claims have nothing to do with anything Defendants allege to have done under the direction of the federal government. Specifically, Defendants have not demonstrated that the government had any role in the actions that caused

SHER
EDLING LLP

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND
CASE NOS. 3:17-CV-04929-VC, 3:17-CV-04934-VC, 3:17-CV-04935-VC**          51

1    Plaintiffs' injuries, namely Defendants' promotion and marketing of fossil fuel products, along

2    with simultaneous concealment of the known hazards of these projects. *See e.g., Leite*, 749 F.3d

3    at 1124 (a causal nexus sufficient to support federal officer removal exists if "the very act that

4    forms the basis of plaintiffs' claims . . . is an act that [the contractor] contends it performed under

5    the direction of the [federal government]"); *In re MTBE Prods. Liab. Litig.,* 488 F.3d at 112 (no

6    causal nexus to justify federal officer removal where federal regulations "say nothing" about

7    marketing and other tortious conduct); *Meyers v. Chesterton*, No. CIV.A. 15-292, 2015 WL

8    2452346, at *6 (E.D. La. May 20, 2015) (rejecting federal officer removal because "nothing

9    about the Navy's oversight prevented the Defendants from complying with any state law duty to

10   warn"). The sparse record of government leases and contracts Defendants cite, moreover, is

11   "simply too small to satisfy the requirement that there be a causal connection between the

12   conduct that was taken under federal authority and Plaintiff's claims." *Bailey v. Monsanto Co.*,

13   176 F. Supp. 3d 853, 870 (E.D. Mo. 2016). Defendants' association with the federal government

14   is too attenuated to support jurisdiction for "acting under" federal officers.

15      **F.    The Case Is Not Removable Under the Bankruptcy Removal Provisions,
                28 U.S.C §§ 1452(A) and 1334.**

16

17            **1.    Plaintiffs Bring These Actions Pursuant to Their Police and Regulatory
                      Powers, and 28 U.S.C. § 1452(a) Expressly Does Not Apply to Police
18                    Power Actions.**

19           Defendants' invocation of the bankruptcy removal statute, 28 U.S.C. § 1452(a), is

20   inapposite. First, Plaintiffs' complaints each present "a civil action by a governmental unit to

21   enforce such governmental unit's police or regulatory power," which is expressly outside the

22   statute's scope:

23           A party may remove any claim or cause of action in a civil action *other than*
             a proceeding before the United State Tax Court *or a civil action by a*
24           *governmental unit to enforce such unit's police or regulatory power*, to the
             district court for the district where such civil action is pending, if such
25           district court has jurisdiction of such claim or cause of action under section
             1334 of this title.
26

27   28 U.S.C. § 1452(a) (emphasis added).

28

SHER
EDLING LLP

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND
CASE NOS. 3:17-CV-04929-VC, 3:17-CV-04934-VC, 3:17-CV-04935-VC**                          52

1    It is undisputed that each Plaintiff is a governmental unit, so the only question is whether

2 the actions enforce Plaintiffs' police powers. Courts in the Ninth Circuit apply "two alternative

3 tests to determine whether the actions of a governmental unit are in exercise of its police and

4 regulatory power: the 'pecuniary purpose' test and the 'public policy' test." *City & Cnty. of San*

5 *Francisco v. PG&E Corp.*, 433 F.3d 1115, 1123–24 (9th Cir. 2006). The purpose of each test is

6 "to permit governmental units to pursue actions to protect the public health and safety," but

7 restrain "actions by a governmental unit to protect a pecuniary interest in property of the debtor

8 or property of the estate." *In re First All. Mortg. Co.*, 264 B.R. 634, 646 (C.D. Cal. 2001)

9 (quoting legislative history). Satisfaction of either test will suffice to exempt the action from the

10 reach of federal jurisdiction. *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1108 (9th Cir. 2005).

11    Applying either the "pecuniary purpose" or "public policy" test, Plaintiffs' claims plainly

12 are brought pursuant to their police powers, and thus are not subject to removal under § 1452(a).

13    Under the pecuniary purpose test, the court determines whether the government
14    action relates primarily to the protection of the government's pecuniary interest in
     the debtor's property or to matters of public safety and welfare. . . . If the
15    government action is pursued solely to advance a pecuniary interest of the
     governmental unit, the stay will be imposed. . . . The public policy test
16    "distinguishes between government actions that effectuate public policy and those
     that adjudicate private rights."

17 *In re Universal Life Church, Inc.*, 128 F.3d 1294, 1297 (9th Cir. 1997), *as amended on denial of*

18 *reh'g* (Dec. 30, 1997) (quoting *N.L.R.B. v. Cont'l Hagen Corp.*, 932 F.2d 828, 833 (9th Cir.

19 1991)). Here, Plaintiffs allege that they, residents, and visitors will be impacted by climate

20 change and consequent sea level rise, including through injuries to numerous public facilities and

21 real property, such as beaches and parks and related infrastructure.[26] Each plaintiff specifically

22 alleges that public resources within its jurisdiction are threatened with severe permanent or

23 intermittent inundation and erosion from sea level rise, including hundreds of residential,

24 commercial, and open space parcels.[27]

25

26 [26] *See, e.g.*, San Mateo Compl. ¶ 13(e); Marin Compl. ¶ 13(f); Imperial Beach Compl. ¶ 13(d).

27 [27] For example, Imperial Beach conducted a Sea Level Rise Vulnerability Analysis that
determined that likely impacts from sea level rise include flooding and damage to approximately

28

SHER
EDLING LLP

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND    53
CASE NOS. 3:17-CV-04929-VC, 3:17-CV-04934-VC, 3:17-CV-04935-VC

1    The purpose of the complaints is to protect the public's health and safety by abating, and

2    paying to correct, the "cascading social and economic impacts" that follow from rising sea levels

3    within their jurisdictions. *See, e.g.*, Compl. ¶ 13(c). Far from being "brought to reap a financial

4    windfall" (Not. of Rem. ¶ 74), the relief sought seeks not to protect any interest held by the

5    Plaintiffs in any bankruptcy debtor's property, but to remediate public harm and protect the

6    public well-being. Punitive damages serve not to enrich the plaintiff, but are aimed principally at

7    retribution and deterring harmful conduct, and therefore do not abrogate the police power

8    function exercised by Plaintiffs. *See Exxon Shipping Co. v. Baker*, 554 U.S. 471, 492 & n.9

9    (2008); *see also In re Berg*, 230 F.3d 1165, 1168 (9th Cir. 2000) (rejecting an "overly literal"

10   interpretation of the pecuniary purpose test and reasoning that the "deterrent effect of monetary

11   penalties can be essential for the government to protect its regulatory interests"); *California ex*

12   *rel. Brown v. Villalobos*, 453 B.R. 404, 412–13 (D. Nev. 2011) (request for civil penalties,

13   disgorgement, and restitution remedies did not convert a governmental unit's police-power

14   action into a solely pecuniary action sufficient for removal); *O'Brien v. Fischel*, 74 B.R. 546,

15   551 (D. Haw. 1987) ("[A] proceeding resulting in a monetary penalty may be excepted from the

16   automatic stay as much as one resulting in a prison sentence or injunctive relief" because of the

17   deterrent effect of such penalties). The Ninth Circuit has firmly rejected the notion that a

18   government entity must have no pecuniary motive at all when exercising its police powers,

19   noting that most actions falling within this exemption have some pecuniary component, and that

20   only if the action is pursued "solely" to advance the government's pecuniary interest will a

21   pecuniary purpose be found. *In re Universal Life Church*, 128 F.3d at 1298–99.

22   Under any conception of the scope of bankruptcy removal, Plaintiffs' causes of actions

23   are exempt, and jurisdiction is absent. *See In re MTBE Prods. Liab. Litig.*, 488 F.3d at 133

24   (state's claims fell within police power exception because "the clear goal of these proceedings is

25

26   40% of the City's roads, miles of bus route and bicycle pathway, miles of wastewater and
     stormwater transmission pipes, two elementary schools, and at least seven known hazardous
27   materials sites within the city. Imperial Beach Compl. ¶¶ 169, 170(a)–(f); *see also* San Mateo
     Compl. ¶¶ 171–73; Marin Compl. ¶¶ 168–79.
28

SHER
EDLING LLP

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND
CASE NOS. 3:17-CV-04929-VC, 3:17-CV-04934-VC, 3:17-CV-04935-VC**                    54

1    to remedy and prevent environmental damage with potentially serious consequences for public

2    health, a significant area of state policy").

3                    **2.      Plaintiffs' Actions Are Not "Relate[d] to" Any Bankruptcy Case.**

4            Even if Plaintiffs were not governmental units exercising their police and regulatory

5    powers, removal would still not be appropriate under 28 U.S.C. §§ 1452(a) and 1334 because

6    Plaintiffs' claims are not "relate[d] to" any bankruptcy case or estate.

7            Specifically, 28 U.S.C. § 1452(a) only allows for removal of claims arising "under

8    section 1334 of this title" and section 1334 vests district courts with original jurisdiction over

9    "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28

10   U.S.C. § 1334(b). Although each subclause in section 1334(b) has been interpreted to create its

11   own basis for jurisdiction (i.e., "arising under," "arising in," or "related to"), here Defendants

12   assert only that the "related to" subclause applies. *See* Not. of Rem. ¶ 70.

13           Prior to confirmation of a Chapter 11 plan, "related to" jurisdiction is broadly interpreted

14   as encompassing matters that "could conceivably have any effect on the estate being

15   administered in bankruptcy." *In re Fietz*, 852 F.2d 455, 457 (9th Cir. 1988) (quoting *Pacor, Inc.*

16   *v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)). After a debtor's bankruptcy plan is confirmed,

17   however—as is the case with both Peabody Energy and Arch Coal—the bankruptcy court's

18   "related to" jurisdiction is substantially narrower. Post-confirmation, "related to" jurisdiction

19   only exists if the claims have a "close nexus" to the bankruptcy and involve the "interpretation,

20   implementation, consummation, execution, or administration of the confirmed plan." *In re*

21   *Pegasus Gold Corp.*, 394 F.3d 1189, 1194 (9th Cir. 2005) (finding "related to" jurisdiction

22   because the plaintiff alleged a breach of the confirmed plan and fraud in the inducement in

23   connection with agreeing to the plan and an associated settlement).[28] There is no "close nexus"

24   ───────────────

25   [28] The bankruptcy court's jurisdiction is necessarily limited following confirmation because the
     overriding policy of the bankruptcy code is to provide the debtor with a "fresh start"—contingent
26   in the Chapter 11 context on the debtor's unsupervised fulfillment of the reorganization plan.
     The Seventh Circuit has explained:
27
             Once the bankruptcy court confirms a plan of reorganization, the debtor may go
28           about its business without further supervision or approval. The firm also is

SHER
EDLING LLP

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND**                    55
**CASE NOS. 3:17-CV-04929-VC, 3:17-CV-04934-VC, 3:17-CV-04935-VC**

where the matter at issue "could have existed entirely apart from the bankruptcy proceeding and did not necessarily depend upon resolution of a substantial question of bankruptcy law." *In re Ray*, 624 F.3d 1124, 1135 (9th Cir. 2010) (no "related to" jurisdiction over claims brought by a would-be real estate purchaser against debtor and actual purchaser following plan confirmation, even though action involved interpretation of the bankruptcy court's sale order).

In the present case, there is no "close nexus" between the issues and causes of action raised and the confirmed Chapter 11 plans of Arch Coal and Peabody Energy, and Defendants do not make a serious contention that there is. The claims at issue are all state law claims that exist entirely apart from the bankruptcy cases and that in no way involve bankruptcy law.

In fact, the only way the bankruptcy cases are tangentially implicated is in determining whether portions of the claims Plaintiffs are asserting were discharged in bankruptcy. Both Peabody and Arch have moved in bankruptcy court for findings that some or all of the claims were discharged, and Plaintiffs have or will oppose those motions.[29] This process is already proceeding in parallel with the litigation, and the result will either be (a) the bankruptcy court finding that the claims were not discharged and the litigation proceeding as it has been or (b) the bankruptcy court finding that some or all of the claims were discharged, requiring Plaintiffs to amend the Complaints to limit the relief sought. Either way, the bankruptcy court's determination in no way magically converts state law tort claims into claims that have a "close nexus" to bankruptcy. Again, the claims have nothing to do with bankruptcy law.

Defendants make three arguments, all of which fail. First, they assert that much of the conduct complained of occurred prior to the Peabody and Arch plans being confirmed, and that

---

without the protection of the bankruptcy court. It may not come running to the bankruptcy judge every time something unpleasant happens. . . . Formerly a ward of the court, the debtor is emancipated by the plan of reorganization. A firm that has emerged from bankruptcy is just like any other defendant in a tort case: it must protect its interests in the way provided by the applicable non-bankruptcy law . . . .

*Pettibone Corp. v. Easley*, 935 F.2d 120, 122 (7th Cir. 1991).

[29] *See In re Peabody Energy Corp.*, No. 16-42529-399 (Bankr. E.D. Mo.); *In re Arch Coal, Inc.*, No. 16-40120 (Bankr. E.D. Mo.).

SHER EDLING LLP

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND
CASE NOS. 3:17-CV-04929-VC, 3:17-CV-04934-VC, 3:17-CV-04935-VC                     56

1    "[t]he Bankruptcy Courts in both Chapter 11 cases have retained exclusive jurisdiction to hear

2    and determine all such matters." Not. of Rem. ¶ 71. But again, the question of whether or not

3    Plaintiffs' claims were discharged, which is what the bankruptcy court has retained jurisdiction

4    to determine (and is already determining), in no way converts state law tort claims into claims

5    that have a "close nexus" with bankruptcy.

6        Second, Defendants allege that Plaintiffs' action could give rise to damages totaling

7    "billions of dollars over the next several decades." Not. of Rem. ¶ 72. Once again, however, the

8    fact that former debtors may face liability over claims that were not discharged in bankruptcy

9    (assuming they were not) does not change the underlying nature of the claims into ones that have

10   a "close nexus" with bankruptcy.

11       Finally, Defendants argue that the Complaints involve "historical activities of

12   Defendants, including predecessor companies and companies that Defendants may have acquired

13   or with which they may have merged," and there are "hundreds of non-joined necessary and

14   indispensable parties," and therefore "there are many other Title 11 cases that may be related."

15   Not. of Rem. ¶ 73. Yet again the Defendants in no way explain how state law tort claims have

16   any sort of "close nexus" with bankruptcy law. Plaintiffs' causes of action "could have existed

17   entirely apart from the bankruptcy proceeding and d[o] not necessarily depend upon resolution of

18   a substantial question of bankruptcy law." *In re Ray*, 624 F.3d at 1135.

19                    **3.    Equity Demands That This Case Be Remanded to State Court.**

20       Even if this action could be found to be "related to" a bankruptcy proceeding—which it

21   cannot—equity demands that this case be remanded to state court. The bankruptcy removal

22   statute provides that a bankruptcy-related claim removed under § 1452 may be remanded "on

23   any equitable ground." 28 U.S.C. § 1452(b). This standard represents "an unusually broad grant

24   of authority" that "subsumes and reaches beyond all of the reasons for remand under

25   nonbankruptcy removal statutes." *In re McCarthy*, 230 B.R. 414, 417 (B.A.P. 9th Cir. 1999).

26   Courts generally weigh a number of factors, including: (1) the effect of the action on the

27   administration of the bankruptcy estate; (2) the extent to which issues of state law predominate;

28   (3) the difficulty of applicable state law; (4) comity; (5) the relatedness or remoteness of the

SHER
EDLING LLP

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND
CASE NOS. 3:17-CV-04929-VC, 3:17-CV-04934-VC, 3:17-CV-04935-VC**                    57

1  action to the bankruptcy estate; (6) the right to a jury trial; and (7) prejudice to the plaintiff from

2  removal. *Hopkins v. Plant Insulation Co.*, 349 B.R. 805, 813 (N.D. Cal. 2006).

3    The factors governing equitable remand are essentially the same as the factors governing

4  abstention under 28 U.S.C. § 1334(c)(1). *Id.* That provision grants courts discretion "in the

5  interest of justice, or in the interest of comity with State courts or respect for State law, from

6  abstaining from hearing a particular proceeding" related to a Title 11 case. 28 U.SC.

7  § 1334(c)(1).

8    Though any one of the equitable factors may provide a sufficient basis for remand,

9  *Hopkins*, 349 B.R. at 813, in this case essentially every factor weighs in favor of remand. As

10  noted, the two bankruptcy cases Defendants identified have already been confirmed, and this

11  action will not affect the administration of those plans. Second, and perhaps most importantly,

12  the Complaint is based entirely on state law claims and the case could not otherwise have

13  originated in federal court. If removed on the basis of bankruptcy jurisdiction, the case could be

14  transferred to the U.S. Bankruptcy Court for the Eastern District of Missouri where the two

15  confirmed bankruptcy proceedings are pending (Not. of Rem. ¶ 71)—an inappropriate venue to

16  decide complex California law issues. Comity likewise favors remand because it makes no sense

17  for a federal court to adjudicate pure questions of state law. *See Drexel Burnham Lambert Grp.,*

18  *Inc. v. Vigilant Ins. Co.*, 130 B.R. 405, 409 (S.D.N.Y. 1991) ("Congress has made it plain that, in

19  respect to noncore proceedings such as this (i.e., cases which assert purely state law causes of

20  action), the federal courts should not rush to usurp the traditional precincts of the state court.");

21  *In re Schwartz*, No. 5:09-CV-05831 EJD, 2012 WL 899331, at *2 (N.D. Cal. Mar. 15, 2012)

22  ("[S]tate law issues clearly predominate the entire action. Without a doubt the state court is better

23  able to hear and determine a suit involving questions of state law." (citation omitted)).

24    In short, the interests of equity compel the court to abstain from hearing the case and to

25  remand pursuant to 28 U.S.C. § 1452(b) or § 1334(c)(1).

26  **VI.    CONCLUSION**

27    Plaintiffs' complaints seek relief exclusively under state law, and none of Defendants'

28  laundry list of federal defenses supports removal jurisdiction. As the Second Circuit explained in

1  *In re MTBE Products Liability Litig*ation, 488 F.3d at 135–36, a case involving many of the

2  defendants in this case:

> 3  The plaintiffs' claims arise under and will be decided under state law, and
> 4  although the defendants may refer to federal legislation by way of a defense, the
>    jury's verdict will not necessarily turn on a construction of that federal law. As
> 5  the Supreme Court noted in *Merrell Dow Pharmaceuticals Inc. v. Thompson,* 478
>    U.S. 804 (1986), "the mere presence of a federal issue in a state cause of action
> 6  does not automatically confer federal-question jurisdiction." *Id.* at 813. Indeed,
>    words written by Justice Cardozo more than seventy years ago are equally
> 7  applicable here:

> 8  "The most one can say is that a question of federal law is lurking in
> 9  the background, just as farther in the background there lurks a
>    question of constitutional law, the question of state power in our
> 10 federal form of government. A dispute so doubtful and conjectural,
>    so far removed from plain necessity, is unavailing to extinguish the
> 11 jurisdiction of the states."

12  *Gully v. First Nat'l Bank*, 299 U.S. 109, 117 (1936).

13  For the reasons explained above, this Court lacks jurisdiction over these actions, and they should

14  be remanded to the California Superior Courts where they were properly filed.

15

16

17  Dated:  October 23, 2017            **OFFICE OF THE COUNTY COUNSEL**
                                        **COUNTY OF SAN MATEO**

18

19                              By:  */s/ John C. Beiers*
                                     JOHN C. BEIERS, County Counsel
20                                   PAUL A. OKADA, Chief Deputy
                                     DAVID A. SILBERMAN, Chief Deputy
21                                   MARGARET V. TIDES, Deputy

22

23  Dated:  October 23, 2017            **McDOUGAL, LOVE, BOEHMER, FOLEY,**
                                        **LYON & CANLAS, CITY ATTORNEY FOR**
24                                      **CITY OF IMPERIAL BEACH**

25

26                              By:  */s/ Jennifer Lyon*
                                     JENNIFER LYON, City Attorney
27                                   STEVEN E. BOEHMER, Assistant City
                                     Attorney

28

SHER
EDLING LLP

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND**
**CASE NOS. 3:17-CV-04929-VC, 3:17-CV-04934-VC, 3:17-CV-04935-VC**                    59

1

**OFFICE OF THE COUNTY COUNSEL**
**COUNTY OF MARIN**

2

3

Dated:  October 23, 2017        By:    */s/ Brian E. Washington*

4                                      BRIAN E. WASHINGTON, County Counsel
                                       BRIAN C. CASE, Deputy County Counsel

5

6

**SHER EDLING LLP**

7

8

Dated:  October 23, 2017               */s/ Victor M. Sher*

                                       VICTOR M. SHER

9                                      MATTHEW K. EDLING
                                       TIMOTHY R. SLOANE

10                                     MARTIN D. QUIÑONES
                                       KATIE H. JONES

11

12                                     *Attorneys for Plaintiffs*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28